UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| POLICE AND FIRE RETIREMENT SYSTEM OF THE CITY OF DETROIT,<br><br>Plaintiff,<br><br>v.<br><br>ROSEMARY A. CRANE, et al.,<br><br>Defendants. | Case No. 13-cv-00945-VC<br><br>**ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND**<br><br>Re: Docket No. 39 |

In this putative class action, the Police and Fire Retirement System of the City of Detroit ("Retirement System") alleges that Epocrates and two of its executives, Rosemary Crane and Patrick Spangler, defrauded investors by: (i) failing to disclose serious delays in the company's ability to recognize deferred revenue from DocAlerts; and (ii) making materially misleading statements about the company's ability to recognize, and predict the timing of, revenue from DocAlerts. The defendants have filed a motion to dismiss, which is granted with leave to amend.

The complaint pleads facts that raise a very strong inference that, in early 2011, the company was experiencing a very serious problem with revenue recognition for DocAlerts – a problem that was likely to materially affect the company's financial results in future quarters. If Crane and Spangler were aware of the seriousness of this problem, their failure to disclose it to the investing public would constitute securities fraud – particularly their failure to disclose it in connection with the statements they made in March and May (when they announced their quarterly results for the fourth quarter of 2010 and the first quarter of 2011, respectively).

However, the complaint falls slightly short of alleging facts sufficient to create a strong inference that the defendants acted with the required state of mind when they failed to disclose the problem. Although the complaint adequately alleges Crane and Spangler were aware by at least February that the company's problem with DocAlerts could have a significant impact on first quarter financial results (indeed, they began having daily meetings about it with the finance team,

including CW1), it falls short of alleging facts that would show they knew or suspected the problem would likely have a significant effect on results in future quarters. After all, as the complaint itself acknowledges, the company's contract-restructuring efforts succeeded in closing the gap between the company's original performance projections for the first quarter of 2011 and CW1's updated projections based on his discovery of the problem with the DocAlerts. Compl. at ¶¶ 57-58. To successfully allege that the defendants intended to deceive the investing public, the complaint would need to raise a strong inference that Crane and Spangler knew (or suspected) that the first-quarter contract restructuring process was but a temporary band-aid that would not help the company avoid performance shortfalls (or that would exacerbate shortfalls) in future quarters.

Although the complaint alleges this, it does not do so with sufficient detail or specificity. For example, the complaint repeatedly asserts that the contract renegotiation process "artificially inflated the Company's reported revenue in 1Q 2011 at the expense of revenue in subsequent quarters," Compl. at ¶ 6, but it does not specifically indicate that Crane and Spangler were aware or suspected that the renegotiation process was merely a band-aid that masked (or exacerbated) deficiencies in future quarters. Similarly, paragraph 58 alleges: "CW2 and the rest of the revenue accounting team wondered how the Company could possibly meet its 2Q 2011 revenue expectations, because there were not enough customer contracts that could be repapered." But this allegation does not lay knowledge at the feet of Crane and Spangler. And paragraph 57 alleges: "CW1 stated that the Company had already accelerated DocAlert revenue from the second quarter to the first quarter, and had tried to accelerate DocAlert revenue from the third quarter to the second quarter, but that proved not to be feasible." This also does not create a strong inference that Crane and Spangler knew or suspected all along that the restructuring efforts were a mere first-quarter band-aid.

As discussed above, the question whether the complaint raises a strong inference of scienter beginning in February 2011 is a close one. Less close is the question whether the complaint successfully alleges that Crane and Spangler, with the required state of mind, made material omissions or false statements in connection with the company's February 1, 2011 IPO. The complaint very generally describes one January meeting involving CW1, Crane and Spangler

in which they discussed the problem and agreed the company needed to address it. Compl. at ¶ 40. But the daily meetings to address the revenue shortfall did not begin until February, and the general allegation about the January meeting, on its own, does not raise a strong inference that Crane and Spangler intended to deceive the investing public by not disclosing the problem during the IPO.

Finally, the complaint alleges the company violated Generally Accepted Accounting Principles ("GAAP") in several respects. The complaint does not make clear how important these allegations are to the Retirement System's fundamental contention that the defendants acted with scienter by failing to disclose the revenue-recognition problems with DocAlerts. During argument, counsel for the Retirement System asserted that the GAAP violations would have rendered the company's quarterly financial statements fraudulent, but that the GAAP violations were not necessary to support the more fundamental allegation that the defendants intended to defraud the investing public by failing to disclose the DocAlert problems. In any event, the complaint fails to plead a GAAP violation with sufficient specificity. For example, the complaint alleges that under FASB Accounting Standards Codification 605-25-25-5, Epocrates was precluded from recognizing any DocAlert revenue until all DocAlerts called for by a contract with a pharmaceutical company were disseminated to subscribers. Compl. at ¶¶ 104-131. But as counsel for the Retirement System acknowledged at argument, this would only be true if pharmaceutical companies had the right to "return" individual DocAlerts once they were disseminated to subscribers. The complaint does not coherently allege that such a right existed, and it is difficult to imagine that it could do so. The complaint also alleges Epocrates engaged in illegal revenue and earnings management in violation of SEC Staff Accounting Bulletin 99, Compl. at ¶¶ 132-35, but that Bulletin speaks to a much narrower and more specific question whether a company must correct its financials if it discovers an error that is presumptively immaterial. The complaint further alleges that the company violated ASC 605-25-50-2 by failing "to disclose the Company's practice of canceling and renegotiating the terms of the DocAlert contracts," Compl. at ¶ 136, but this allegation is made in passing and without any explanation.

For these reasons, the complaint is dismissed, with leave to amend. The Retirement

1  System shall have 21 days from the date of this order to file an amended complaint.

2  **IT IS SO ORDERED.**

3  Dated: June 4, 2014

_____
VINCE CHHABRIA
United States District Judge