1  DEBORAH S. BIRNBACH (*pro hac vice*)
   *dbirnbach@goodwinprocter.com*
2  **GOODWIN PROCTER LLP**
   53 State Street
3  Boston, Massachusetts 02109
   Tel:     617.570.1000
4  Fax:     617.523.1231

5  Michael T. Jones (SBN 290660)
   *mjones@goodwinprocter.com*
6  **GOODWIN PROCTER LLP**
   135 Commonwealth Drive
7  Menlo Park, California 94025
   Tel.:    650.752.3100
8  Fax.:    650.853.1038

9  Teodora E. Manolova (SBN 233333)
   *tmanolova@goodwinprocter.com*
10 **GOODWIN PROCTER LLP**
   601 S. Figueroa St., 41st Floor
11 Los Angeles, California 90017
   Tel.:    213.426.2500
12 Fax.:    213.623.1673

13 Attorneys for Defendants
   Epocrates, Inc., Rosemary A. Crane,
14 and Patrick D. Spangler

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| POLICE AND FIRE RETIREMENT SYSTEM OF THE CITY OF DETROIT, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>ROSEMARY A. CRANE, PATRICK D. SPANGLER, and EPOCRATES, INC.,<br><br>Defendants. | Case No. 3:13-CV-00945-VC<br><br>CLASS ACTION<br><br>**NOTICE OF MOTION AND MOTION TO DISMISS THE THIRD AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:     Dec. 18, 2014<br>Time:    10:00 a.m.<br>Dept:     4, 17th Floor<br>Judge:   Hon. Vince Chhabria |

# TABLE OF CONTENTS

**PAGE**

I. PRELIMINARY STATEMENT ........................................................................................ 1

II. A HIGHER PLEADING STANDARD APPLIES TO SECURITIES FRAUD CASES ............................................................................................................................. 3

III. PLAINTIFFS FAIL TO PLEAD "COGENT AND COMPELLING" FACTS ESTABLISHING A "STRONG INFERENCE" OF SCIENTER ....................................... 4

    A. Plaintiffs Fail To Adequately Plead Details About The New Contractual Arrangements ............................................................................................................ 5

    B. Plaintiffs' Confidential Witnesses Allegations Add No Details That Support Securities Fraud. ........................................................................................................ 7

    C. The TAC Otherwise Fails To Establish Scienter ...................................................... 9

IV. PLAINTIFFS AGAIN FAIL TO ADEQUATELY ALLEGE ANY ACTIONABLE MISSTATEMENT OR OMISSION. ............................................................................... 12

    A. No Duty To Disclose ................................................................................................ 12

    B. No Material Misstatements Or Omissions ............................................................... 13

V. PLAINTIFFS DO NOT ADEQUATELY ALLEGE LOSS CAUSATION ...................... 15

VI. PLAINTIFFS' SECTION 20(a) CLAIM SHOULD BE DISMISSED ............................. 15

VII. CONCLUSION ................................................................................................................ 15

# TABLE OF AUTHORITIES

**PAGE(s)**

**CASES**

*In re 2007 Novastar Fin., Inc., Sec. Litig.*,
  2008 WL 2354367 (W.D. Mo. June 4, 2008) ...........................................................................11

*Brody v. Transitional Hosps. Corp.*,
  280 F.3d 997 (9th Cir. 2002) ....................................................................................... 12, 13, 14

*City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*,
  2013 WL 6441843 (N.D. Cal. Dec. 9, 2013) ..........................................................................10

*City of Roseville Emps.' Ret. Sys. v. Sterling Fin. Corp.*,
  2013 WL 3990798 (E.D. Wash. Aug. 5, 2013) .......................................................................10

*City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.*,
  880 F. Supp. 2d 1045 (N.D. Cal. 2012) ..................................................................................14

*In re Cornerstone Propane Partners, L.P. Sec. Litig.*,
  355 F. Supp. 2d 1069 (N.D. Cal. 2005) ..................................................................................10

*Ernst & Ernst v. Hochfelder*,
  425 U.S. 185 (1976) ..................................................................................................................4

*Eshelman v. Orthoclear Holdings, Inc.*,
  2009 WL 506864 (N.D. Cal. Feb. 27, 2009) ...........................................................................12

*Gompper v. VISX, Inc.*,
  298 F.3d 893 (9th Cir. 2002) .....................................................................................................4

*Matrixx Initiatives, Inc. v. Siracusano*,
  131 S. Ct. 1309 (2011) ............................................................................................................12

*Metzler Inv. GMBH v. Corinthian Colleges, Inc.*,
  540 F.3d 1049 (9th Cir. 2008) ......................................................................................9, 11, 15

*In re NVIDIA Corp. Sec. Litig.*,
  768 F.3d 1046 (9th Cir. 2014) .......................................................................................*passim*

*In re Pacific Gateway Exch., Sec. Litig.*,
  169 F. Supp. 2d 1160 (N.D. Cal. 2001) ..................................................................................11

*Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*,
  2012 WL 1868874 (N.D. Cal. May 22, 2012) ..........................................................................2

*Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*,
  759 F.3d 1051 (9th Cir. 2014) .............................................................................................2, 12

*Retail Wholesale & Dep't Store Union Local 338 Ret. Fund v. Hewlett-Packard Co.*,
   2014 WL 2905387 (N.D. Cal. June 25, 2014) ..........................................................................12

*In re Rigel Pharm., Inc. Sec. Litig.*,
   697 F.3d 869 (9th Cir. 2012) ....................................................................................................5

*Ronconi v. Larkin*,
   253 F.3d 423 (9th Cir. 2001) ................................................................................................4, 9

*Steckman v. Hart Brewing, Inc.*,
   1996 WL 881659 (S.D. Cal. Dec. 24, 1996) ...........................................................................12

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007) ..............................................................................................................3, 4

*In re Vantive Corp. Sec. Litig.*,
   283 F.3d 1079 (9th Cir. 2002) ..............................................................................................9, 11

*In re Worlds of Wonder Sec. Litig.*,
   35 F.3d 1407 (9th Cir. 1994) ................................................................................................9, 11

*Zucco Partners, LLC v. Digimarc Corp.*,
   552 F.3d 981 (9th Cir. 2009) ............................................................................................ passim

**STATUTES**

15 U.S.C. § 78u–4 ..........................................................................................................................1, 4

15 U.S.C. § 78u–5 .............................................................................................................................1

**OTHER AUTHORITIES**

Fed. R. Civ. P. 9(b)........................................................................................................................1, 3

Fed. R. Civ. P. 12(b).........................................................................................................................1

| | |
|---|---|
| 1 | **NOTICE OF MOTION AND MOTION TO DISMISS** |
| 2 | TO THE COURT, ALL PARTIES AND THEIR COUNSEL OF RECORD: |
| 3 | PLEASE TAKE NOTICE that on Thursday, December 18, 2014 at 10:00 a.m., or as soon |
| 4 | thereafter as counsel may be heard, in the courtroom of the Honorable Vince Chhabria, at the |
| 5 | United States Courthouse, 450 Golden Gate Avenue, San Francisco, CA 94102, Defendant |
| 6 | Epocrates, Inc. ("Epocrates" or the "Company"), and Defendants Rosemary A. Crane and Patrick |
| 7 | D. Spangler (together, the "Individual Defendants") (collectively, "Defendants"), will and hereby |
| 8 | do move this Court for an order granting their Motion to Dismiss Plaintiffs' Third Amended Class |
| 9 | Action Complaint (the "Third Amended Complaint" "TAC" or "¶__") with prejudice. |
| 10 | Defendants' motion seeks dismissal of all claims against them and is brought pursuant to |
| 11 | Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure ("FRCP"), as well as the provisions |
| 12 | of the Private Securities Litigation Reform Act of 1995 (the "Reform Act" or "PSLRA"), 15 U.S.C. |
| 13 | §§ 78u-4 & 5.  This motion is based on this Notice and the accompanying Memorandum of Points |
| 14 | and Authorities; the Request for Judicial Notice; the Declaration of Michael T. Jones ("Jones |
| 15 | Decl."); the papers on file in the action; the argument of counsel at the hearing; and other such |
| 16 | matters as may be considered by the Court. |
| 17 | **ISSUES TO BE DECIDED (Civil Local Rule 7-4(a)(3))** |
| 18 | 1. Have Plaintiffs alleged sufficiently a claim under Section 10(b)/Rule 10b-5? |
| 19 | 2. Have Plaintiffs pled a cause of action for control person liability under Section 20(a)? |
| 20 | **MEMORANDUM OF POINTS AND AUTHORITIES** |
| 21 | **I.      PRELIMINARY STATEMENT.** |
| 22 | In their *fourth complaint*, Plaintiffs fail to justify the Court's patience and willingness to |
| 23 | give them yet another chance to present a colorable securities fraud claim.  Borrowing the Court's |
| 24 | words from the last hearing, Plaintiffs allege in conclusory fashion that Epocrates was "robbing |
| 25 | Peter [2Q, 3Q, 4Q] to pay Paul [1Q]."  But the TAC lacks particularized facts supporting a strong |
| 26 | inference that, as of 1Q, Defendants knew that the Company would not meet its financial |
| 27 | projections for 2Q-4Q such that they intentionally deceived investors.  To establish scienter, |
| 28 | Plaintiffs could have "either (1) point[ed] to a dramatically false statement that itself creates a |

1

strong inference of deliberate recklessness or actual knowledge of falsity; or (2) provid[ed] particularized allegations of scienter with respect to each [Individual] Defendant." *Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, 2012 WL 1868874, at *16 (N.D. Cal. May 22, 2012), *aff'd*, 759 F.3d 1051 (9th Cir. 2014). Plaintiffs have done neither, and Ninth Circuit case law mandates dismissal. *See, e.g.*, *In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1056-59 (9th Cir. 2014) (no scienter as to company's delay in disclosing product defects where company was investigating problem and disclosed only upon realizing liability would exceed its normal reserves: "while the complaint may plausibly allege knowledge of the [problem], it does not plausibly allege that [defendants] intentionally misled investors . . . by not disclosing the problem sooner"); *Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1061-63 (9th Cir. 2014) (no scienter as to denials that sales force observed delayed deals, reduced system sales, or impact on buying patterns due to economic downturn where complaint failed to allege facts sufficient to raise strong inference that individual defendants knew of those circumstances).

Plaintiffs' latest attempt to state a claim differs little from their prior efforts and fails to address the Court's key concerns. When dismissing the FAC,[1] the Court instructed that to survive dismissal, Plaintiffs needed to allege particularized facts "rais[ing] a strong inference that Crane and Spangler knew (or suspected) that the first-quarter contract restructuring process was but a temporary band-aid that would not help the company avoid performance shortfalls . . . in future quarters." June 4, 2014 Order ("Order") at 2. After Plaintiffs failed to address the Court's concerns in the SAC, the Court instructed that any further amendment include ***details*** about the new contractual arrangements (*i.e.*, what they were worth compared to the old arrangements) to allow the Court to determine whether the new deals were such a "massive sacrifice of the future," such that it was "obvious to anyone who [was] involved in it, including Crane and Spangler, . . . that the company was in much different shape than represented at the end of March and at the end of May." Ex. M (10/2/14 Hearing Tr.) at 56:8-12.[2] Despite being advised that this was their last chance,

---

[1] "FAC" refers to Plaintiffs' [First] Amended Complaint (Dkt. No. 36), "SAC" refers to Plaintiffs' Second Amended Complaint (Dkt. No. 65).

[2] All references to "Ex." are to the exhibits to the Jones Decl. submitted herewith. Defendants have concurrently filed a Request for Judicial Notice in support of their motion. In deciding this motion,

2

Plaintiffs have again ignored the Court's direction by failing to provide *any* of the particularized facts this Court deemed necessary to establish the required strong inference of intent to deceive. Instead, the TAC largely repackages, reorganizes, and realleges the same conclusory allegations this Court previously found deficient in its June 4 Order and at the October 2 Hearing.

After four bites at the apple, the TAC should be dismissed with prejudice:

- *No Scienter*: Even if Plaintiffs had adequately alleged Defendants' knowledge of the future specific impact on 2Q, 3Q, and 4Q of the expanding regulatory queues—they have not—the TAC fails to "plausibly allege that [Defendants] intentionally misled investors, or acted with deliberate recklessness by not disclosing [the specific future impact of the regulatory delays] sooner." *NVIDIA*, 768 F.3d at 1056-57.

    o *No Facts Concerning "New Arrangements"*: By failing to add *any* specific details about the new contractual arrangements, Plaintiffs do not "raise a strong inference that Crane and Spangler knew (or even suspected) that the first-quarter contract restructuring process was but a temporary band-aid that would not help the company avoid performance shortfalls . . . in future quarters." Order at 2.

    o *No Specific Facts Giving Rise to a Strong Inference of Scienter*: The motiveless fraud alleged by Plaintiffs makes no sense and cannot withstand the Ninth Circuit's pleading requirements for scienter. Plaintiffs' continued reliance on general corporate motives and hypothetical scenarios cannot survive dismissal.

    o **Confidential Witnesses ("CWs")** *Allegations Insufficient*: To the limited extent the TAC amends the prior CW allegations, it offers only superficial details or more conclusory allegations about Defendants' purported knowledge of the alleged contract renegotiation process and its purported generic impact on the Company.

    o *GAAP Allegations Insufficient*: Despite numerous attempts to do so, Plaintiffs again fail to plead sufficient facts to support a GAAP violation or, more importantly, a finding that Crane or Spangler were aware of any such violation.

- *No Material Misstatements or Omissions*: Plaintiffs' omission allegations fail, as Epocrates adequately disclosed the risk of lengthier customer regulatory approvals on the timing of revenue recognition, and no duty required disclosure – in 1Q 2011 or earlier – that these risks would have a material impact on future revenues. Plaintiffs' misstatement allegations likewise fail, as the alleged misstatements are non-actionable as immaterial, corporate puffery, accurate statements of historical fact, and/or safe harbor-protected.

- *No Loss Causation*: The TAC fails to adequately plead any causal link between the alleged omissions and misstatements and any loss suffered, because the complained-of fraud was never revealed, through the Company's August 2011 disclosures or otherwise.

II. <u>**A HIGHER PLEADING STANDARD APPLIES TO SECURITIES FRAUD CASES.**</u>

To survive dismissal, Plaintiffs must satisfy the heightened requirements of Rule 9(b) as

---

the Court may consider documents incorporated by reference and matters of which a court may take judicial notice. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 321 (2007).

well as the "more exacting" pleading requirements of the PSLRA. *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 990 (9th Cir. 2009).[3] The PSLRA requires that a complaint plead both falsity and scienter with particularity. *Id.*[4] To allege scienter, Plaintiffs must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u–4(b)(2)(A).[5] The "inference of scienter must be more than merely plausible or reasonable—it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs*, 551 U.S. at 314. The PSLRA's heightened pleading requirements "are an unusual deviation from the usually lenient requirements of federal rules pleading." *Ronconi v. Larkin*, 253 F.3d 423, 437 (9th Cir. 2001). The court must weigh competing inferences and "only allow the complaint to survive a motion to dismiss if the malicious inference is at least as compelling as any opposing innocent inference." *Zucco*, 552 F.3d at 991; *see also Gompper v. VISX, Inc.*, 298 F.3d 893, 897 (9th Cir. 2002) ("[T]he court must consider all reasonable inferences . . . including inferences unfavorable to the plaintiffs.").

### III. PLAINTIFFS FAIL TO PLEAD "COGENT AND COMPELLING" FACTS ESTABLISHING A "STRONG INFERENCE" OF SCIENTER.

Despite four attempts to do so, Plaintiffs have not alleged facts giving rise to a strong inference of scienter and cannot satisfy these stringent pleading requirements. The TAC, like Plaintiffs' prior three complaints, lacks a coherent theory of fraud that could support even a reasonable inference that Defendants acted with fraudulent intent, much less the "cogent and compelling" inference required to be balanced against non-fraudulent inferences under *Tellabs*. Taken together, Plaintiffs' allegations paint the picture of a motiveless, profitless scheme

---

[3] The elements of a Section 10(b) or Rule 10b-5 claim are: (1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation. *NVIDIA*, 768 F.3d at 1052.

[4] To allege falsity, Plaintiffs must specify "each statement alleged to have been misleading, [and] the reason or reasons why the statement is misleading." 15 U.S.C. § 78u–4(b)(1)(B).

[5] "Scienter" refers to "a mental state embracing intent to deceive, manipulate, or defraud." *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 n.12 (1976). The Ninth Circuit has explained that scienter requires "a strong inference of, at a minimum, deliberate recklessness." *NVIDIA*, 768 F.3d at 1053. "[P]laintiff must plead a highly unreasonable omission, . . . an extreme departure from the standards of ordinary care, and which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it." *Zucco*, 552 F.3d at 991.

perpetrated by Defendants for a single quarter—for which Epocrates made *no* external projections—only to disappoint the market the very next quarter. Despite the Court's clear mandate, the TAC adds no further factual allegations to raise a strong inference that Crane and Spangler knew that the alleged first-quarter contract restructuring process was a temporary fix such that the Company would be unable to meet its *annual* revenue guidance three quarters later. Having not provided *any* details about the new contractual arrangements, the fraudulent inference here is not nearly as compelling as the opposing innocent inference—that as various factors impacted 2Q 2011 results, Epocrates accurately reported those results and revised its annual earnings guidance to reflect that 2Q reality. Moreover, as discussed in Defendants' prior motions to dismiss,[6] the TAC does not come close to meeting the Ninth Circuit's standards for pleading scienter, i.e., "stat[ing] with particularity facts giving rise to a strong inference that the [Defendants] acted with the required state of mind." *In re Rigel Pharm., Inc. Sec. Litig.*, 697 F.3d 869, 877 (9th Cir. 2012).

### A. Plaintiffs Fail To Adequately Plead Details About The New Contractual Arrangements.

The TAC fails to include facts explaining the nature of, or quantifying in any way, the new contractual arrangements—a deficiency this Court highlighted. Plaintiffs allege that Defendants engaged in a fraudulent revenue management scheme to cancel and renegotiate DocAlerts contracts that allegedly: (i) concealed a known trend – expanding regulatory queues – that was having a material, negative impact on revenue; (ii) allowed the Company to meet market expectations for 1Q 2011 only by accelerating revenue recognition at the expense of revenue in subsequent quarters; and (iii) created the false appearance of revenue growth trajectory in 1Q 2011 that would not be sustained and ultimately was not sustained in 2Q 2011. TAC ¶ 85. Seizing on a suggestion from the last hearing, Plaintiffs make the unsubstantiated claim that Defendants were "robbing Peter [2Q, 3Q, 4Q] to pay Paul [1Q]." TAC ¶ 65. But the TAC lacks any factual allegations to support that the new deals were such a "massive sacrifice of the future," that it was "obvious to anyone who [was] involved in it, including Crane and Spangler, . . . that the company was in much different

---

[6] "FMTD" refers to Defendants' Motion to Dismiss the First Amended Complaint (Dkt. No. 39); "SMTD" refers to Defendants' Motion to Dismiss the Second Amended Complaint (Dkt. No. 67).

shape than represented at the end of March and at the end of May." Ex. M at 56:8-12.

The TAC contains no concrete examples of the new arrangements, let alone details about how much a new contract was worth in comparison to an old contract. The TAC instead includes vague references to items that *might* be included in a new contractual arrangement, such as allegations of: (i) exchanging unused DocAlerts for surveys (CW2, TAC ¶ 36); (ii) trading three unused DocAlerts in the old contract for four in the new, thereby offering a "free" alert (CW7, TAC ¶ 37); and (iii) providing enhanced product listing or products with a messaging component (CW5, TAC ¶ 38). However, these allegations contain no new facts,[7] and the "examples" provided are abstract, merely listing new services that *might* have been included in the new contracts.

***Vague Allegations Concerning Discounts and Incentives***: While CW2 is the only CW to identify clients whose "big contracts" were renegotiated, TAC ¶ 35, his allegation pertaining to "examples of incentives" offered under the new contracts does not, from the face of the TAC, involve these specific clients, *see* TAC ¶ 36. Regardless, CW2 provided the same "examples" in the SAC—additional DocAlerts and substitution of surveys, *see supra* note 7—without any details suggesting that the new contracts were "bad" for Epocrates or would prevent the Company from achieving its annual guidance three quarters later. *See* Ex. M at 18:14-25. CW2 again vaguely asserts that "[customers] were, at times, given discounts that were applied to the new contracts." *Compare* TAC ¶ 36, *with* SAC ¶ 52.

CW5's example is equally flawed. CW5 does not name any customer, alleging only vaguely that deals were made with the Company's "best customers." TAC ¶ 38. Without further elaboration, CW5 simply alleges that customers received incentives in the form of "enhanced product listing or products with a messaging component" and makes the unsubstantiated allegation that "in each case they would open a new contract with equal or more value to the customer." TAC ¶ 38. This allegation states the conclusion with no facts. Again, all of these allegations were in the SAC, *see supra* note 7, and Plaintiffs have not added *details* concerning the incentives and discounts allegedly offered to customers in connection with these new contracts.

---

[7] *Compare* TAC ¶ 36, *with* SAC ¶ 52 (CW2 discussing surveys); TAC ¶ 37, *with* SAC ¶ 48 (CW7 discussing exchanging three unused DocAlerts in the old contract for four in the new); TAC ¶ 38, *with* SAC ¶ 36 (CW5 discussing enhanced product listings and messaging components).

*Offering a "Free" Alert*: The most elaborate attempt by Plaintiffs to provide an example of new deal terms actually undermines their theory of fraud. CW7 alleges that he "had to offer incentives – for example trading three unused DocAlerts in the existing contract for four in the new contract (thus offering effectively a 'free' alert) – in order to convince his customers to renegotiate." TAC ¶ 37. CW7's lone, vague allegation leaves this Court to guess the depth and breadth of his practice of "offer[ing] incentives," as it provides no details about which customers were involved in these deals, how often such deals were made, or how much the new deals were worth in comparison to the old ones—*i.e.*, how one DocAlert "freebie" impacted the value of the new contracts. Rather, CW7's example is the type of "good deal" for the Company that the Court alluded to in the last hearing:

> THE COURT: But the problem with your example is that you've extended the date and you've gotten more money out of them for exactly the same products that you previously contracted for. Previously, you contracted for four DocAlerts for a thousand dollars, and you, Epocrates, go to your client and you say, you know what, you're not going to get the benefit of the four DocAlerts for your thousand dollars, so I'll tell you what, we'll cut you a break and . . . we'll disseminate the two DocAlerts for you that . . . you weren't going get under this contract. Just pay us an additional $500. That sounds like a pretty awesome deal for Epocrates and its shareholders.

Ex. M at 32:21-33:9. Plaintiffs have thus actually pled facts showing that the Company was able to recognize revenue on the original contract (four DocAlerts on the old deal) in addition to booking future new revenue (three of the four DocAlerts on the new deal) to be recognized in later periods.

Plaintiffs did not fulfill their promise to "go back to each of the[] confidential witnesses and ask them for more specifics of what was in the new contract." *Id.* at 80:5-8. Instead, Plaintiffs repurposed a handful of allegations from the previously identified witnesses on the issue of the new deals. Because the TAC provides no details regarding the new contractual arrangements, Plaintiffs have failed to adequately allege that Defendants were aware of any quantified future impact of the expanding regulatory queues, that Defendants intentionally misled investors, or that Defendants acted with deliberate recklessness by not disclosing the specific future revenue impact sooner.

**B.     Plaintiffs' Confidential Witnesses Allegations Add No Details
         That Support Securities Fraud.**

The CW allegations fail to "raise a strong inference that Crane and Spangler knew (or

7

MOTION TO DISMISS THIRD AMENDED CLASS ACTION COMPLAINT
(Case No. 3:13-CV-00945-VC)

suspected) that the first-quarter contract restructuring process was but a temporary band-aid that would not help the company avoid performance shortfalls . . . in future quarters." Order at 2. Plaintiffs' CW allegations are recycled allegations which this Court has already rejected as insufficient to establish a strong inference of scienter.[8] To the extent Plaintiffs endeavor to bolster their prior CW allegations, the amendments are superficial. For example, the TAC adds the allegations that CW7 worked at Epocrates from 2008 to late 2011, and that CW6 worked at the Company from 2008 to 2011. TAC ¶¶ 37, 60. But in both instances, it remains unclear whether these CWs were even employed during the entire Class Period. *See* SMTD at 7. These allegations do not even clear the first hurdle of the *Zucco* dual-pronged analysis. *Id.*[9] Moreover, the fact remains that CW7's single allegation not only fails to give rise to the requisite strong inference of scienter, but rather supports Defendants' argument for dismissal. *See supra* at 7.

Otherwise, Plaintiffs simply augment the CW allegations to assert *more* conclusory allegations about the contract renegotiation process and Defendants' knowledge thereof. For instance, CW1 provides hearsay about another employee's sentiments regarding the alleged redirecting of the sales team's efforts from booking to renegotiating. TAC ¶ 32. CW1 and CW5 provide new allegations about how the sales team's time was spent "redoing all the contracts instead of booking new business," with CW1 conclusorily asserting that such events "had an impact on long-term revenue." *Id.*; *see also* TAC ¶ 54. These new allegations essentially boil down to disgruntled employees' hindsight opinion about misplaced manpower. Plaintiffs do not attempt to quantify the future impact, supposedly known as of 1Q 2011, that would render Ms. Crane's or Mr. Spangler's statements knowingly false when made. Not only does the TAC fail to allege any facts that any of these CWs told Defendants that their statements were false or materially misleading, Plaintiffs do not offer a single CW who alleges those facts. Not one CW said that the 1Q actual results were false or that Defendants were giving misleading full year 2011 future guidance. Even

---

[8] Plaintiffs add CW9, an engineer who claims that there was a limit on how many DocAlerts could be disseminated in a given time frame. TAC ¶ 47. CW9's lone allegation does not bolster Plaintiffs' claims, and the TAC does not include sufficient detail about CW9 to establish even his presence throughout the duration of the Class Period, let alone his reliability. *See* FMTD at 10.
[9] Under *Zucco*, a CW must be described with sufficient particularity to establish his reliability and personal knowledge, and his statements must themselves be indicative of scienter. 552 F.3d at 995.

8

if Plaintiffs' conclusory allegations are true, a Company's decision to shift its sales force's focus does not demonstrate Defendants acted with scienter, intentionally seeking to deceive investors. Given the TAC's reference to "all these [CWs] who played an integral role," Ex. M at 21:13-14, it is even more telling that Plaintiffs could not provide any additional details regarding the new deals.

### C. The TAC Otherwise Fails To Establish Scienter.

***Lack of Personal Benefit***: Plaintiffs' repeated failure to allege *any* tangible, personal benefit received by the Individual Defendants as a result of the purported fraud weighs against an inference of scienter. *See* FMTD at 8-9; SMTD at 5. Like its predecessors, the TAC does not—and cannot—allege that the Individual Defendants engaged in insider trading or otherwise received any increased personal benefit as is typically alleged in securities cases.[10] The TAC merely recycles the SAC's speculation regarding hypothetical motives and generic allegations regarding incentive-based executive compensation,[11] which the Ninth Circuit repeatedly rejects as inadequate to establish a strong inference of scienter. *See* SMTD at 3-5; SMTD Reply at 2-3. "If [such] simple allegations of pecuniary motive were enough to establish scienter, virtually every company . . . that experiences a downturn . . . could be forced to defend securities fraud actions." *Zucco*, 552 F.3d at 1005. That Individual Defendants retained *all* of their Epocrates stock during the Class Period negates any inference of scienter.[12]

***Corporate Reshuffling***: The TAC also copies virtually verbatim the SAC's allegations that certain employees were demoted or terminated, or otherwise departed from Epocrates.[13] These

---

[10] The Ninth Circuit has repeatedly found no strong inference of scienter even in cases with allegations of actual personal benefit to the individual defendants. *See, e.g.*, *In re Vantive Corp. Sec. Litig.*, 283 F.3d 1079, 1093-96 (9th Cir. 2002) (no scienter where chairman sold 74% of holdings, CEO sold 17%, CFO sold 32%, and other officers sold 26-55%); *Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1067 (9th Cir. 2008) (no scienter where CFO sold 100%, CEO sold 37%, and COO sold none); *Ronconi*, 253 F.3d at 435-36 (no scienter where GC sold 98%, CFO sold 17%, and CEO sold 10%).
[11] *Compare* TAC ¶ 75, *with* SAC ¶ 78; TAC ¶ 129, *with* SAC ¶ 167; TAC ¶ 130, *with* SAC ¶ 168.
[12] *See, e.g., In re Worlds of Wonder Sec. Litig.*, 35 F.3d 1407, 1424-25 (9th Cir. 1994) ("[I]f . . . the Officers knew [the company] was heading for financial disaster, they probably would have bailed out of their substantial holdings. Each [defendant], by contrast, held onto most of their [stock] and incurred the same large losses as did the Plaintiffs[.]"); *see also* FMTD at 8-9; SMTD at 5.
[13] *Compare* TAC ¶¶ 61, 128, *with* SAC ¶¶ 56, 166; TAC ¶ 62, *with* SAC ¶ 57 (Ochoa); TAC ¶ 63, *with* SAC ¶ 58 (Wong); TAC ¶ 64, *with* SAC ¶ 59 (CW3); TAC ¶ 69, *with* SAC ¶ 64 (Podbere).

allegations still fail to raise the statutorily required strong inference of scienter.[14] Again, Plaintiffs' assertion that Wong—an employee who is not alleged to have been interviewed by Plaintiffs—was supposedly demoted because he "resisted the scheme and refused to recognize accelerated revenue" is based entirely on speculation by CW3. TAC ¶ 58. Wong was not terminated, but rather replaced as Director of Revenue Accounting in January 2011 (*i.e.*, pre-IPO and pre-Class Period) and remained an employee of the Company. *Id.* Moreover, because Wong left *on his own accord* after more than eight months, Plaintiffs are required—but have failed—to "plead facts refuting other reasonable assumptions . . . for [his] resignation to be strongly indicative of scienter." *City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 2013 WL 6441843, at *14 (N.D. Cal. Dec. 9, 2013) (no scienter where CFO resigned and remained employee for six months); *see also NVIDIA*, 2010 WL 4117561, at *11 (similar).

For the same reasons, the resignation of Podbere—also not alleged to have spoken with Plaintiffs—does not support a strong inference of scienter. TAC ¶ 69. His resignation was after the end of the Class Period, when Epocrates disappointed the market with the release of its second quarter 2011 financial results and its revised earnings guidance for that year. *Id.* Because "[c]orporate executives are held accountable for the corporation's financial performance; when that performance suffers, those executives are often replaced. . . . There is simply no evidence, or even a reasoned inference, that [the] departure was attributable to anything other than personal accountability for [the company's] poor financial performance." *City of Roseville Emps.' Ret. Sys. v. Sterling Fin. Corp.*, 2013 WL 3990798, at *39 (E.D. Wash. Aug. 5, 2013).

Likewise, Plaintiffs' conclusory allegations that Ochoa—another employee who is not alleged to have been interviewed by Plaintiffs—and CW3 were terminated after alleged disagreements over the Company's revenue recognition practices cannot support a strong inference of scienter. TAC ¶¶ 62, 64, 128. That former employees and Defendants may have had divergent business judgments does not by itself establish a claim for securities fraud. *See Zucco*, 552 F.3d at 998 (allegations of disagreement within the corporation over its accounting processes not indicative

---

[14] "Notable departures are not in and of themselves evidence of scienter." *In re Cornerstone Propane Partners, L.P. Sec. Litig.*, 355 F. Supp. 2d 1069, 1092-93 (N.D. Cal. 2005); *see also* FMTD Reply at 11-13; SMTD Reply at 9.

of scienter); *Metzler*, 540 F.3d at 1069 (allegations regarding "disagreement and questioning" about accounting insufficient to establish of scienter).

*GAAP-Based Allegations*: Plaintiffs again fail to plead sufficient facts to support a GAAP violation, and it remains "[un]clear how important [the GAAP] allegations are to [Plaintiffs'] contention that the defendants acted with scienter." Order at 3. The TAC recycles the SAC's allegations regarding the "use it or lose it" clauses of the DocAlert contracts. *Compare* TAC ¶¶ 29, 30, 55, *with* SAC ¶¶ 46, 36. These allegations confirm that Epocrates had the right to recognize revenue from the cash-deferred revenues at the conclusion of the contracts; it did not need to incentivize customers to cancel their DocAlert contracts (or to enter into new contracts for different services) in order to recognize revenue. *See* SMTD at 9; SMTD Reply at 4-6. The most cogent and compelling inference to be drawn from the alleged facts is that Epocrates took appropriate steps to keep customers happy by reworking agreements to make sure that some services were delivered despite customers' internal delays. SMTD at 7.

Plaintiffs' accounting allegations again fail to support scienter. The TAC still fails to allege the "approximate amount by which revenues and earnings were overstated"—a necessary "basic detail" in accounting fraud allegations. *Vantive*, 283 F.3d at 1091; *see also* FMTD at 16-17; SMTD at 9. Even if the TAC adequately alleged a GAAP violation—it does not—"[t]he mere publication of inaccurate accounting figures, or a failure to follow GAAP, without more, does not establish scienter." *Worlds of Wonder*, 35 F.3d at 1426. Even in cases with a restatement—which is notably lacking here[15]—to allege a strong inference of scienter for a violation of GAAP, Plaintiffs must allege that Defendants "knowingly and recklessly engaged in improper accounting practices," *Metzler*, 540 F.3d at 1068–69, detailing "how or when each defendant became aware of the allegedly improper accounting practices" and "the extent of each defendant's contribution or involvement," *In re Pacific Gateway Exch., Sec. Litig.*, 169 F. Supp. 2d 1160, 1167 (N.D. Cal. 2001); *see also* FMTD at 18-19. The TAC alleges no new facts supporting the existence of a

---

[15] Epocrates' financials have been repeatedly audited without a restatement and "nobody—the SEC, [the Company's] auditors, or anyone else—has suggested [the Company] should or must restate its financial reports." *In re 2007 Novastar Fin., Inc., Sec. Litig.,* 2008 WL 2354367, at *3 (W.D. Mo. June 4, 2008), *aff'd*, 579 F.3d 878 (8th Cir. 2009). The TAC's pleading inadequacies are amplified by the lack of restatement. *Id.*; FMTD at 17-18; SMTD at 9-10.

11

GAAP violation, let alone any Defendant's knowledge thereof.

IV. **PLAINTIFFS AGAIN FAIL TO ADEQUATELY ALLEGE ANY ACTIONABLE MISSTATEMENT OR OMISSION.**

A. **No Duty To Disclose.**

Plaintiffs continue to allege omissions related to the impact of regulatory delays on the timing of revenue recognition in the future, allegedly disclosed later as the "truth" when Epocrates announced disappointing results one quarter later. However, for an omission to be actionable, there must be a duty to disclose the underlying noncompliance or misconduct. *Retail Wholesale & Dep't Store Union Local 338 Ret. Fund v. Hewlett-Packard Co.*, 2014 WL 2905387, at *7 (N.D. Cal. June 25, 2014). A duty of disclosure is only triggered if necessary to prevent a statement from being so incomplete as to mislead. *Matrixx Initiatives, Inc. v. Siracusano*, 131 S. Ct. 1309, 1321-22 (2011).

Defendants had *no* duty to disclose the allegedly omitted information related to the impact of regulatory delays on the timing of revenue recognition and the Company's ability to meet its annual guidance. *See* SMTD at 10-13.[16] Defendants were not obligated to make predictions to the market about the company's quarterly revenue prospects prior to releasing actual quarterly results. *See* SMTD at 11-12. "The Ninth Circuit has consistently rejected claims that a company has a duty to predict the results for an uncompleted quarter or for future periods. By disclosing its historical results for all completed periods . . . [Defendants] did not assume an obligation to make guarantees about subsequent periods." *Steckman v. Hart Brewing, Inc.*, 1996 WL 881659, at *3 (S.D. Cal. Dec. 24, 1996), *aff'd*, 143 F.3d 1293 (9th Cir. 1998). Once Epocrates disclosed these specific risks, it was under no further duty to disclose the risks' estimated future impact.[17]

Plaintiffs have not adequately pleaded that Defendants affirmatively created an impression of a state of affairs that differed in a material way from the one that actually existed. *See Brody v.*

---
[16] To the extent the TAC alleges that Defendants "misled investors about the Company's true business trends – expanding regulatory queues – that were having a material, negative impact on the Company's prospects," *see* TAC ¶ 39, Plaintiffs are again complaining about a "trend" that was not required to be disclosed. *NVIDIA*, 768 F.3d at 1054-56 (holding Item 303 does not create a duty to disclose for purposes of Section 10(b) and Rule 10b–5); *Intuitive*, 759 F.3d at 1061 (same); *see also* SMTD at 10-13.

[17] *See, e.g.*, *Eshelman v. Orthoclear Holdings, Inc.*, 2009 WL 506864, at *6 (N.D. Cal. Feb. 27, 2009) (where it already disclosed litigation-related risks, company was not required to further predict outcome or estimate future impact).

12

*Transitional Hosps. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002) (affirming dismissal). Epocrates' public statements described the state of affairs: expanding regulatory queues were causing internal approval delays at pharmaceutical companies, which could impact the timing of revenue recognition. *See* Ex. A (risk disclosure chart). Plaintiffs maintain that Defendants "created the false appearance of a revenue growth trajectory in 1Q 2011 that could not be sustained and ultimately was not sustained in 2Q 2011." TAC ¶ 39. But Epocrates *never* made public quarterly projections, and the Company in fact met 1Q 2011 internal and external expectations. Regardless of how "surprised" this made CW1, TAC ¶ 65, Plaintiffs do not provide facts showing the Company had reason to doubt its ability to stay on course. Instead, Plaintiffs claim only that the Company's *internal* 2Q 2011 expectations were unachievable, supported only by conclusory allegations, TAC ¶ 39; post-hoc summarizations, TAC ¶ 65 ("In 2Q 2011, however, the Company fell short of its internal revenue forecast. CW1 explained that one could not accelerate revenue indefinitely . . . ."); and vague assertions, TAC ¶ 66 ("CW2 and the rest of the revenue accounting team wondered how the Company could possibly meet its 2Q 2011 revenue expectations . . . ."). Despite Plaintiffs' efforts to convince this Court to adopt an unworkable disclosure model that contradicts Ninth Circuit law, none of their allegations establishes a duty to disclose here.

### B. No Material Misstatements Or Omissions.[18]

Plaintiffs continue to allege that Defendants omitted material information regarding (i) risks related to the potential impact of regulatory delays (as opposed to customers' internal approvals) on revenue; and Plaintiffs allege as misleading Defendants' statements regarding (ii) changes in the Company's revenue and revenue recognition practices; (iii) "positive momentum," "visibility" into future revenue, and strong performance during 1Q 2011; and (iv) responses to stated questions regarding customer regulatory queues. *See, e.g.*, TAC ¶¶ 5, 85.

*Risk Disclosures Concerning Potential Regulatory Delays*: Plaintiffs allege Defendants made "faulty risk disclosures concerning potential FDA reviews (as opposed to known internal regulatory reviews)." *See* TAC ¶¶ 71-74, 82, 85. Epocrates' filings, however, described the

---

[18] For the Court's convenience, Jones Decl. Ex. N is a chart summarizing the alleged misstatements and/or omissions and the grounds from Defendants' briefs supporting dismissal of each.

regulatory environment for DocAlerts—disclosing that "the timing of [FDA] approval for new pharmaceutical products or for new approved uses for existing products," was a factor that "could affect the timing of our interactive services revenue," and specifically addressed the potential for delays resulting from clients' internal approvals—warning that recognition of revenue "may be subject to delays over which we have little or no control, including those that result from the client's need for internal approvals."  Ex. B (S-1/A) at 18-19; Ex. E (3/31/11 Form 10-K) at 29; Ex. H (5/12/11 Form 10-Q) at 37.  Plaintiffs' mischaracterization of these disclosures as "vague" falls flat: "No matter how detailed and accurate disclosure statements are, there are likely to be additional details that could have been disclosed but were not."  *Brody v.* 280 F.3d at 1006.[19]

***Statements on Changes in the Company's Accounting Policies***:  Plaintiffs allege as false or misleading Defendants' statement in the 1Q 2011 Form 10-Q that there were no significant changes in the Company's critical accounting policies during the quarter ended March 31, 2011.  татC ¶ 87.  Plaintiffs contend that "the recognition of revenues upon the cancellation and repapering of contracts with the major pharmaceutical companies during the first three months of 2011 constituted a significant change of accounting policies."  *Id.*  Plaintiffs fail to specify a specific change in accounting policy, and the TAC lacks any factual allegations to support that such information would be viewed by investors as being material, where the market was already informed that the contracts were noncancellable, Epocrates already had the money in its possession and disclosed the policy by which it would be recognized subject to customer internal regulatory approvals, and the Company only issued *annual* guidance.  *See* SMTD Reply at 8.

***Statements on Positive Momentum, Visibility Into Future Revenue, and Strong Performance in 1Q 2011***:  As previously established by Defendants, the statements regarding "positive momentum," revenue "visibility," and "strong performance," TAC ¶¶ 5, 78-80, 90-92, 96, 126, are either non-actionable expressions of corporate optimism, accurate statements of historical fact (for 1Q 2011), or forward-looking statements protected by the PSLRA's safe harbor

---

[19] Plaintiffs' continued attempts to compare Epocrates' regulatory disclosures to comments made by a competitor during an earnings call do not render Defendants' disclosures materially false.  *See City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.*, 880 F. Supp. 2d 1045, 1066 (N.D. Cal. 2012) (rejecting plaintiffs' argument that defendants should have made a more fulsome disclosure, like the one set forth in an FASB guideline example).

provision.  *See* FMTD at 23; FMTD Reply at 21-22; SMTD at 13-14; SMTD Reply at 9.

***Responses to Stated Questions Regarding Regulatory Queues***:  Again, Plaintiffs attempt to mischaracterize an exchange between Ms. Crane and a William Blair analyst about *bookings demand* during the May 10, 2011 analyst call as one about *timing of revenue recognition*.  TAC ¶ 93.  Plaintiffs' allegations are belied by close examination of the actual analyst question and Ms. Crane's response.  *See* FMTD Reply at 22-23; SMTD Reply at 9.

## V. PLAINTIFFS DO NOT ADEQUATELY ALLEGE LOSS CAUSATION.

The TAC does not adequately plead loss causation.  Plaintiffs cannot establish any causal link between the alleged omissions and misstatements and any loss suffered, because the complained-of fraud was never revealed, through the Company's August 2011 disclosures or otherwise.  *See Metzler*, 540 F.3d at 1064; FMTD at 24; SMTD at 15.

## VI. PLAINTIFFS' SECTION 20(a) CLAIM SHOULD BE DISMISSED.

Because Plaintiffs have failed adequately to plead a primary violation of the securities laws, their Section 20(a) "control person" claim fails as a matter of law.  *See Zucco*, 552 F.3d at 990.

## VII. CONCLUSION.

For the foregoing reasons, the TAC should be dismissed with prejudice as further attempts would be futile.  *See, e.g.*, *Metzler*, 540 F.3d at 1072 (affirming dismissal with prejudice where "deficiencies . . . persisted in every prior iteration of [the complaint]"); *Zucco*, 552 F.3d at 1007-08 (same).  Over three years have passed since the events at issue, and Plaintiffs have had four chances and over eighteen months to state a claim.  The factual paucity of the allegations, their lack of legal support, and Plaintiffs' inability or unwillingness to follow the Court's pleading instructions confirm that dismissal with prejudice is warranted.

Dated:  November 10, 2014

Respectfully submitted,

**GOODWIN PROCTER LLP**

By:  */s/ Michael T. Jones*

Attorneys for Defendants

## **CERTIFICATE OF SERVICE**

I, Michael T. Jones, hereby certify that a copy of the foregoing document, filed through the CM/ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies shall be served by first class mail postage prepaid on all counsel who are not served through the CM/ECF system on November 10, 2014.

/s/ Michael T. Jones