LIONEL Z. GLANCY (#134180)
MICHAEL M. GOLDBERG (#188669)
JOSHUA L. CROWELL (#295411)
ROBERT V. PRONGAY (#270796)
CASEY E. SADLER (#274241)
GLANCY BINKOW & GOLDBERG LLP
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone:   (310) 201-9150
Facsimile:    (310) 201-9160
Email:         info@glancylaw.com

BETH A. KASWAN (*pro hac vice*)
DEBORAH CLARK-WEINTRAUB (*pro hac vice*)
DONALD A. BROGGI (*pro hac vice*)
AMANDA F. LAWRENCE (*pro hac vice*)
JOSEPH D. COHEN (#155601)
SCOTT+SCOTT, ATTORNEYS AT LAW, LLP
The Chrysler Building
405 Lexington Avenue, 40th Floor
New York, New York 10174
Telephone:   (212) 223-6444
Facsimile:    (212) 223-6334

*Attorneys for Lead Plaintiff*

*[Additional counsel appear on signature page.]*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| POLICE AND FIRE RETIREMENT SYSTEM OF THE CITY OF DETROIT, Individually and On Behalf of All Others Similarly Situated,<br><br>                Plaintiff,<br><br>       v.<br><br>ROSEMARY A. CRANE, PATRICK D. SPANGLER, and EPOCRATES, INC.,<br><br>                Defendants. | Case No. 3:13-cv-00945-VC<br><br>**PLAINTIFF'S SUPPLEMENTAL REPLY MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THIRD AMENDED COMPLAINT**<br><br>Date:<br>Time:<br>Dep't:   4, 17th Floor<br>Judge:   Hon. Vince Chhabria |

Plaintiff's Supplemental Reply Memorandum in Opposition
to Defendants' Motion to Dismiss Third Amended Complaint - No. 3:13-cv-00945-VC

**INTRODUCTION**

In answer to the Court's first question, Plaintiff's Supplemental Memorandum ("Pl. Supp. Mem.") explained that Defendants had a duty to disclose the cancelling and repapering of contracts irrespective of the content of the replacement contracts, because otherwise, Defendants' public statements concerning (i) when Epocrates recognized revenue, (ii) the supposed reasons for the stunning growth in DocAlert revenues during the first three months of 2011 ("1Q2011"); and (iii) what those results represented in terms of the Company's underlying business fundamentals, were materially false and misleading. *See* ECF No. 92. In answer to the Court's second question, Plaintiff explained that the basis for this duty is the federal securities laws' fundamental tenet that a duty to disclose arises when disclosure is necessary to make statements that have been made, not misleading. *See Matrixx Initiatives, Inc. v. Siracusano*, 131 S. Ct. 1309, 1321 (2011), quoting 17 C.F.R. §240.10b-5(b).

Rather than even address whether the statements above or other statements that Plaintiff identified in its Third Amended Complaint ("TAC") as materially false and misleading gave rise to a duty to disclose the repapering scheme, Defendants nonsensically cherry-pick a statement in the Company's IPO Registration Statement, which Plaintiff has not alleged was false and misleading, as the predicate for their argument that there was no duty to disclose and that the repapering scheme was not material or sufficiently particularized.[1] Defendants also fail to grapple with the many Ninth and Second Circuit decisions that Plaintiff cited as supporting Defendants' legal duty to disclose. These cases make clear that when management secretly changes the accounting rules used to prepare a company's financial reports in order to "close the gap" between actual performance and the performance they desire to present to investors (as Defendants did here), they have committed intentional (and at times, criminal) securities fraud. Defendants inexplicably dismiss these authorities as inapposite in a single footnote. (Def. Mem. at n.3).

---

[1] *See* Defendants' Supplement Memorandum ("Def. Mem.") at 2, which quotes and challenges a statement from the Registration Statement at p. 91.

Plaintiff's Supplemental Reply Memorandum in Opposition         1
to Defendants' Motion to Dismiss Third Amended Complaint - No. 3:13-cv-00945-VC

In so doing, Defendants continue their tactic of setting up and battling a straw man of their own choosing, rather than dealing with the facts actually alleged in the TAC and the legal authorities Plaintiff is actually relying upon in this case. There's a reason for this. When Plaintiff's actual claim (rather than the claim Defendants wish Plaintiff had pled) is considered, Defendants' duty to disclose the repapering scheme is indisputable under controlling legal authority. Accordingly, Defendants' motion to dismiss the TAC must be denied.

I.   **Defendants Had a Duty to Disclose the Repapering Scheme**

Plaintiff's TAC describes an elaborate and unorthodox scheme, conceived by Epocrates' most senior officers, CEO Rosemary Crane ("Crane") and CFO Patrick Spangler ("Spangler"), which involved prematurely cancelling DocAlert contracts with the Company's major pharmaceutical customers before their terms had expired, and then "repapering" them – *i.e.*, writing new replacement contracts. As alleged in the TAC, and confirmed by the many senior former Company accounting and sales managers who objected to the scheme, the scheme's purpose was to mislead investors about the Company's inability to deliver DocAlerts during the first three months of 2011 because of its customers' regulatory queues, and the resulting adverse impact on the Company's first quarter 2011 ("1Q2011") revenues that the Company would otherwise be allowed to report under the revenue recognition rules described in the Company's SEC filings. TAC ¶¶28-30. As described in Plaintiff's earlier response to the Court's questions, Defendants made at least three groups of statements that gave rise to Defendants' "duty to disclose":

- During the 1Q2011 earnings conference call in response to an analyst's question, Crane falsely denied that the customer regulatory delays were occurring;

- Crane and Spangler touted the remarkable 1Q2011 DocAlert revenue growth over the prior year, and Crane misled investors about the reasons for the higher DocAlert revenues; and

Plaintiff's Supplemental Reply Memorandum in Opposition
to Defendants' Motion to Dismiss Third Amended Complaint - No. 3:13-cv-00945-VC

2

- The 1Q2011 Form 10-Q misled investors about the Company's true revenue recognition practices and falsely stated that they had not changed.

Pl. Supp. Mem. at 4.

These statements, and others alleged in the TAC, squarely put the reasons for Epocrates' revenue growth and the issue of the regulatory queues "in play." They thus gave rise to a duty to disclose the repapering scheme, because the statements otherwise falsely promoted the impression of robust growth driven in the ordinary course rather than the true state of affairs – a Company that needed to resort to prematurely canceling and rewriting customer contracts because it could not get its key product out the door. *Shapiro v. UJB Fin. Corp.*, 964 F.2d 272, 282 (2d Cir. 1992); *cf. Galati v. Commerce Bancorp, Inc.*, 220 Fed. Appx. 97, 102 (3d Cir. 2007) (citing *Shapiro*); *see also In re Providian Fin. Corp. Sec. Litig.*, 152 F. Supp. 2d 814, 824 (E.D. Pa. 2001) (Defendants' assertion that its past financial success was due to a "customer focused approach" had put the subject "in play").

Defendants' contention that the repapering scheme was immaterial in this context is unavailing. Contrary to Defendants' contention, there can be no serious question that misleading omissions about a company's past revenues and the reasons for its growth are "material." *See, e.g., In re Time Warner Inc. Secs. Litig.*, 9 F.3d 259, 267-68 (2d Cir. 1993) (when an omission purports to make a prior statement misleading, "the inquiries as to duty and materiality coalesce"); *Ronconi v. Larkin*, 253 F.3d 423, 431 (9th Cir. 2001) (growing sales "matter to an investor"); and *S.E.C. v. Todd*, 642 F.3d 1207, 1221 (9th Cir. 2011) ('how officers and directors of a public corporation describe revenue growth to investors is important").

**II. Defendants Offer Only Obfuscation in Response to Plaintiff's Showing of Material Misleading Omissions**

Defendants do not even begin to address the points made above or in Plaintiff's earlier papers. Instead, Defendants' Supplemental Memorandum argues that they had no "duty to disclose" the repapering scheme because Epocrates never disclosed "its alleged pre-IPO practice" of extending the deadlines in customer contracts and delaying revenue recognition until

Plaintiff's Supplemental Reply Memorandum in Opposition
to Defendants' Motion to Dismiss Third Amended Complaint - No. 3:13-cv-00945-VC

3

DocAlerts could be delivered, as distinguished from enforcing the "use it or lose it" provisions in the contracts and recognizing revenue at the expiration of the contract term. Def. Mem. at 1. In support, Defendants cherry-pick a statement from the MD&A section of the IPO Registration Statement, which Plaintiff never cited in any brief or mentioned in its TAC, stating that DocAlerts contracts "generally expire after a period of one year, at which point our obligations are considered fulfilled whether or not the services have been completed," *id.* at 2, and argue that this statement, as opposed to all of the false and misleading statements cited in the TAC, did not give rise to a duty to disclose the repapering scheme. The fact that Defendants ignore all of the statements that Plaintiff actually alleges were false and misleading and gave rise to a duty to disclose the repapering scheme is telling. Equally telling is the fact that Defendants' argument completely ignores the extensive disclosures found in the footnotes to the financial statements contained in the IPO Registration Statement and the 2010 Form 10-K describing the Company's revenue recognition practices, **which represented that DocAlert revenues were not being reported until the DocAlerts were delivered**. *See, e.g.*, TAC Ex. 1 (ECF No. 81-1) at 91-92.[2] These detailed footnote disclosures combined with Spangler's statements regarding how the backlog provided visibility and rolled over into revenue as DocAlerts were delivered, unquestionably misled investors to believe that the reported revenue was due to DocAlerts that were actually delivered, not because Defendants were prematurely cancelling contracts and rewriting them. Therefore, Defendants' statements clearly gave rise to a duty to disclose the repapering scheme.

Through their statements to investors bragging about the remarkable 40% growth in 1Q2011 versus 1Q2010 DocAlert revenues,[3] and attributing that growth to the Company's 2010

---

[2] Significantly, the 1Q2011 Form 10-Q stated that these practices were unchanged.

[3] Defendants, in their December 3, 2014 reply brief (ECF No. 88) at 9, incorrectly asserted that Crane in referring to a 40% "sales" growth rate did not mean growth in recognized "revenues." A comparison of the percentages used to describe growth in the interactive services business in the Company's 1Q2011 press release ("approximately 24%" in "sales" growth) versus Spangler's comments at the earnings conference ("23.6%" in "revenue" growth) shows

4

Plaintiff's Supplemental Reply Memorandum in Opposition
to Defendants' Motion to Dismiss Third Amended Complaint - No. 3:13-cv-00945-VC

contracts, Defendants clearly set out to create a misleading impression. Investors would not have interpreted those facts as laudatory if they had known the true concealed facts – that revenues had been accomplished by prematurely cancelling contracts because deliveries had stalled. That is the essence of a securities fraud, a statement that is knowingly calculated to mislead investors about the Company's true state of affairs. *Berson v. Applied Signal Tech., Inc.*, 527 F.3d 982, 985 (9th Cir. 2008).

### III. Conclusion

For the reasons stated herein and in Plaintiff's earlier briefs, Defendants' Motion to Dismiss should be denied and the TAC should be sustained.

DATED:  February 27, 2015                    SCOTT+SCOTT, ATTORNEYS AT LAW, LLP

By:   *s/ Beth A. Kaswan*
Beth A. Kaswan
Deborah Clark-Weintraub
Amanda F. Lawrence
The Chrysler Building
405 Lexington Avenue. 40th Floor
New York, New York 10174
Telephone:  (212) 223-6444
Facsimile:  (212) 223-6334
Email:  bkaswan@scott-scott.com

DAVID R. SCOTT
SCOTT+SCOTT, ATTORNEYS AT LAW, LLP
156 South Main Street, P.O. Box 192
Colchester, Connecticut 06415
Telephone:  (860) 537-5537
Facsimile:  (860) 537-4432
Email: david.scott@scott-scott.com

GLANCY BINKOW & GOLDBERG LLP
Lionel Z. Glancy
Michael M. Goldberg
Joshua L. Crowell
Robert V. Prongay
Casey E. Sadler
1925 Century Park East, Suite 2100

---

that at Epocrates, the terms, "sales" growth and "revenue" growth, were used interchangeably. *See* TAC ¶¶90, 91.

Plaintiff's Supplemental Reply Memorandum in Opposition
to Defendants' Motion to Dismiss Third Amended Complaint - No. 3:13-cv-00945-VC

5

Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
Email: info@glancylaw.com

*Attorneys for Lead Plaintiff*

Plaintiff's Supplemental Reply Memorandum in Opposition
to Defendants' Motion to Dismiss Third Amended Complaint - No. 3:13-cv-00945-VC

6

**CERTIFICATE OF SERVICE**

I hereby certify that on February 27, 2015, a copy of the foregoing was filed electronically via this Court's electronic filing system, and served via email on all parties registered to receive electronic notice. Notice of this filing will be served by mail on those not registered to receive such notice. Parties may access this filing through the Court's CM/ECF System.

Dated: February 27, 2015  SCOTT+SCOTT, ATTORNEYS AT LAW, LLP
New York, New York

*/s/ Beth A. Kaswan*
Beth A. Kaswan
The Chrysler Building
405 Lexington Avenue. 40th Floor
New York, New York 10174
Telephone:  (212) 223-6444
Facsimile:  (212) 223-6334
Email:  bkaswan@scott-scott.com

*Attorney for Lead Plaintiff*

Plaintiff's Supplemental Reply Memorandum in Opposition
to Defendants' Motion to Dismiss Third Amended Complaint - No. 3:13-cv-00945-VC

7