1  LIONEL Z. GLANCY (#134180)
   JOSHUA L. CROWELL (#295411)
2  ROBERT V. PRONGAY (#270796)
   CASEY E. SADLER (#274241)
3  GLANCY PRONGAY & MURRAY LLP
   1925 Century Park East, Suite 2100
4  Los Angeles, California 90067
   Telephone: (310) 201-9150
5  Facsimile: (310) 201-9160
   E-mail: jcrowell@glancylaw.com
6
7  BETH A. KASWAN (*pro hac vice*)
8  DEBORAH CLARK-WEINTRAUB (*pro hac vice*)
   AMANDA F. LAWRENCE (*pro hac vice*)
9  SCOTT+SCOTT, ATTORNEYS AT LAW, LLP
   The Chrysler Building
10 405 Lexington Avenue, 40th Floor
   New York, New York 10174
11 Telephone: (212) 223-6444
12 Facsimile: (212) 223-6334

13 *Attorneys for Lead Plaintiff Police and Fire Retirement*
   *System of the City of Detroit and the Class*
14
15 *[Additional counsel appear on signature page.]*

16              **UNITED STATES DISTRICT COURT**

17            **NORTHERN DISTRICT OF CALIFORNIA**

18                **SAN FRANCISCO DIVISION**

19 POLICE AND FIRE RETIREMENT          )  Case No. 13-cv-00945-VC
   SYSTEM OF THE CITY OF DETROIT,      )
20 Individually and on Behalf of All Others )  **PLAINTIFF'S NOTICE OF MOTION**
21 Similarly Situated,                 )  **AND MOTION FOR PRELIMINARY**
                                       )  **APPROVAL OF CLASS ACTION**
                                       )  **SETTLEMENT; MEMORANDUM OF**
22          Plaintiff,                 )  **POINTS AND AUTHORITIES IN**
                                       )  **SUPPORT THEREOF**
23          vs.                        )
24                                     )
   ROSEMARY A. CRANE, PATRICK D.       )  Hearing Date:   December 10, 2015
25 SPANGLER, and EPOCRATES, INC.,      )  Time:           10:00 a.m.
                                       )  Location:       Courtroom 4, 17th Floor
26          Defendants.                )  Judge:          Hon. Vince Chhabria
                                       )
27 ─────────────────────────────────────)
28

                    MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT
                    CASE NO. 13-cv-00945-VC

**TABLE OF CONTENTS**

I.      INTRODUCTION ...........................................................................................................1

II.     FACTUAL BACKGROUND .......................................................................................2

        A.      Nature of the Claims and Procedural History .........................................................2

        B.      Settlement Negotiations ...........................................................................................4

        C.      Summary of the Proposed Settlement ......................................................................4

III.    ARGUMENT .................................................................................................................5

        A.      The Proposed Settlement Satisfies the Criteria for Preliminary Approval .............5

        B.      The Settlement Is the Result of a Thorough, Rigorous, and Adversarial
                Process ......................................................................................................................6

        C.      The Settlement Merits Preliminary Approval and Class Members Should
                Be Given Notice and an Opportunity to Be Heard Concerning the Terms
                of the Settlement ......................................................................................................7

        D.      Members of the Class Should Be Given an Opportunity to Request
                Exclusion................................................................................................................10

        E.      The Proposed Notice Satisfies Rules 23(d) and (e) and Due Process
                Requirements ..........................................................................................................10

        F.      The Court Should Preliminarily Approve the Settlement Class ............................11

                i.      The Settlement Class Is Sufficiently Numerous to Warrant
                        Certification ..............................................................................................12

                ii.     There Are Substantial Common Questions of Law and Fact ....................12

                iii.    Plaintiff's Claims Are Typical of Other Settlement Class Members.........13

                iv.     Plaintiff and Lead Counsel Have Adequately Represented the
                        Settlement  Class .......................................................................................13

                v.      The Predominance and Superiority Requirements Are Satisfied ..............14

IV.     PROPOSED SCHEDULE OF EVENTS ........................................................................15

V.      CONCLUSION................................................................................................................15

## <u>TABLE OF AUTHORITIES</u>

<u>CASES</u>

*Amchem Products, Inc. V. Windsor*,
  521 U.S. 591 (1997) ............................................................................................. 11, 14

*Basic Inc. v. Levinson*,
  485 U.S. 224 (1988) .......................................................................................................... 14

*Blackie v. Barrack*,
  524 F.2d 891 (9th Cir. 1975) ........................................................................................... 12

*Churchill Vill., L.L.C. v. G.E.*,
  361 F.3d 566 (9th Cir. 2004) ....................................................................................... 7, 11

*Class Plaintiffs v. City of Seattle*,
  955 F.2d 1268 (9th Cir. 1992) ........................................................................................... 5

*Gerardo v. Quong Hop & Co.*,
  No C 08-3953 JF (PVT), 2009 WL 1974483 (N.D.Cal. Jul. 7, 2009) ............................... 7

*Gribble v. Cool Transp., Inc.*,
  No. CV 06-04863 GAF (SHx), 2008 WL 5281665 (C.D. Cal. Dec. 15, 2008) ................. 7

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) ............................................................................. 11, 12, 13

*Huberman v. Tag It Pacific Inc.*,
  314 Fed. App'x 59 (9th Cir. 2009) ................................................................................... 14

*In re Broadwing, Inc. ERISA Litig.*,
  252 F.R.D. 369 (S.D. Ohio 2006) ...................................................................................... 9

*In re NVIDIA Corp. Driv. Litig.*,
  No. C-06-06110, 2008 WL 5382544 (N.D. Cal. Dec. 22, 2008) ....................................... 9

*In re Portal Software, Inc. Sec. Litig.*,
  No. C-03-5138 VRQ, 2007 WL 1991529 (N.D.Cal. June 30, 2007) ................................. 6

*In re Syncor ERISA Litig.*,
  516 F.3d 1095 (9th Cir. 2008) ........................................................................................... 5

*In re THQ, Inc., Sec. Litig.*,
  No. CV 00-1783AHM(EX), 2002 WL 1832145 (C.D. Cal. Mar. 22, 2002) ................... 12

*Linney v. Cellular Alaska P'ship*,
  151 F.3d 1234 (9th Cir. 1998) ................................................................. 5, 10

*Lumen v. Anderson*,
  280 F.R.D. 451 (W.D. Mo. 2012) ............................................................. 14

*Lundell v. Dell, Inc.*,
  No. C05-3970 JWRS, 2006 WL 3507938 (N.D. Cal. Dec. 5, 2006) ..................... 5, 7, 8, 9

*Mullane v. Cent. Hanover Bank & Trust Co.*,
  339 U.S. 306 (1950) ................................................................................ 11

*Mendoza v. Tucson Sch. Dist. No. 1*,
  623 F.2d 1338 (9th Cir. 1980) ................................................................. 11

*Persky v. Turley*,
  No. CIV 88-1830-PHX-SMM, 1991 WL 329564 (D. Ariz. Dec. 20, 1991) ............ 14

*Satchell v. Fed. Express Corp.*,
  No. C03-2659 SI, 2007 WL 1114010 (N.D. Cal. Apr. 13, 2007) ......................... 6

*Schneider v. Traweek*,
  No. CV 88 0905 RG (KX), 1990 WL 132716 (C.D. Cal. July 31, 1990) ............... 12

*Smilovits v. First Solar, Inc.*,
  295 F.R.D. 423 (D. Ariz. 2013) ................................................................. 14

*Staton v. Boeing Co.*,
  327 F.3d 938 (9th Cir. 2003) ................................................................... 13

*West v. Circle K Stores, Inc.*,
  No. CIV. S-04-0438, 2006 WL 1652598 (E.D. Cal. June 13, 2006) ...................... 6, 7

*Wolin v. Jaguar Land Rover N. Am., LLC*,
  617 F.3d 1168 (9th Cir. 2010) ................................................................. 12

*Yamner v. Boich*,
  No. C-92 20597 RPA, 1994 WL 514035 (N.D. Cal. Sept. 15, 1994) .................... 12

*Young v. Polo Retail, LLC*,
  No. C-02-4546 VRW, 2006 WL 3050861 (N.D. Cal. Oct. 25, 2006) ................... 6, 7

1

RULES

2

Fed. R. Civ. P. 23 .......................................................................................... passim

3

OTHER AUTHORITIES

4

*Manual for Complex Litigation*

5

     2d ed. §30.44 (1985) ...................................................................... 6

6

*Newberg on Class Actions*

7

     §11.25 (1992) ............................................................................... 6

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1   TO THE CLERK OF THE COURT AND ALL PARTIES AND THEIR RESPECTIVE

2   COUNSEL OF RECORD:

3   PLEASE TAKE NOTICE that on December 10, 2015, at 10:00 a.m., or as soon thereafter as

4   the matter may be heard in the Courtroom of the Honorable Vince Chhabria, United States District

5   Court Judge, at the United States District Court for the Northern District of California, 450 Golden

6   Gate Avenue, Courtroom 4, 17th Floor, San Francisco, CA 94102, Lead Plaintiff Police and Fire

7   Retirement System of the City of Detroit ("Plaintiff") will respectfully move, pursuant to Rule 23(e)

8   of the Federal Rules of Civil Procedure, for entry of the [Proposed] Order Preliminarily Approving

9   Settlement and Providing for Notice of Proposed Settlement ("Notice Order"), submitted herewith,

10  which: (1) grants preliminary approval of the proposed Settlement; (2) preliminarily certifies the

11  Settlement Class pursuant to Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure,

12  appoints Plaintiff as Settlement Class representative, and appoints Lead Counsel as Settlement Class

13  counsel; (3) approves the form and manner of the Notice and directs the dissemination of the Notice

14  to Settlement Class Members; (4) sets a date by which objections, if any, to the Settlement, Plan of

15  Allocation, Lead Counsel's Fee and Expense Award, or the Lead Plaintiff Cost and Expense Award

16  must be submitted; (5) sets a date by which Settlement Class Members may request exclusion from

17  the Settlement Class; (6) sets a date by which Settlement Class Members wishing to participate in

18  the Settlement must submit properly completed Proof of Claim and Release forms and supporting

19  documents; and (7) schedules a date and time for a Settlement Hearing to consider final judicial

20  approval of the proposed Settlement.[1]

21                              **MEMORANDUM OF POINTS AND AUTHORITIES**

22  **I.      INTRODUCTION**

23  The Parties have entered into a Stipulation of Settlement dated October 30, 2015 (the

24  "Stipulation") that results in the resolution of all claims in this Litigation for the amount of

25  $5,100,000 in cash on the terms set forth in the Stipulation.  Plaintiff submits this memorandum in

---

27  [1] Unless otherwise defined, all capitalized terms have the meanings ascribed to them in the
28  Stipulation.

1   support of its motion for entry of the Notice Order.

2      Plaintiff, along with defendants Epocrates, Inc. ("Epocrates"), Rosemary A. Crane, and

3   Patrick D. Spangler (collectively, "Defendants") (together with Plaintiff, the "Parties"), believe that

4   the proposed Settlement is a very good result for the Settlement Class and should be preliminarily

5   approved.[2]   The Settlement, which was only achieved after a comprehensive pre-discovery

6   investigation by counsel, informal pre-mediation discovery, analyses by expert consultants, several

7   rounds of motion to dismiss briefing, and hard-fought settlement negotiations, provides a present

8   recovery for the Class in the face of substantial challenges to any recovery after continued litigation,

9   trial, and appeals.   In consideration for the payment of $5,100,000, the Settlement, if approved by the

10  Court, will result in the dismissal of the Third Amended Class Action Complaint for Violations of

11  the Federal Securities Laws (the "Third Amended Complaint") with prejudice, and the release of all

12  related claims against Defendants in the Litigation.   For the reasons set forth herein, the Parties

13  respectfully request that the Court grant this preliminary approval motion.

14  **II.   FACTUAL BACKGROUND**

15      **A.   Nature of the Claims and Procedural History**

16      On March 1, 2013, this putative class action was commenced alleging violations of the

17  federal securities laws on behalf of all Persons who purchased or otherwise acquired the common

18
19  stock of Epocrates between February 1, 2011, and August 9, 2011, inclusive (the "Class Period"),

20  against Defendants Epocrates, Crane, and Spangler.

21      After the Court appointed Lead Plaintiff and approved its choice of Lead Counsel, on

22  October 8, 2013, Plaintiff filed an Amended Complaint alleging false and misleading statements

23  made by Defendants during the Class Period concerning the re-issuing of certain pharmaceutical

24  customer contracts and revenue recognition practices at Epocrates.   Plaintiff asserted two causes of

25

26  ────────────────

27  [2] Defendants take no position on the Plan of Allocation, Lead Counsel's Fee and Expense Award, or
    on the Lead Plaintiff Cost and Expense Award, which, as provided in the Stipulation, are to be
28  considered separately from the Court's final approval of the Settlement.

action: (i) false and misleading statements and failing to disclose material facts to artificially inflate and maintain Epocrates' stock price in violation of §10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") and SEC Rule 10b-5 against all Defendants; and (ii) control person liability under §20(a) of the Exchange Act for §10(b) violations against Defendants Crane and Spangler. Defendants moved to dismiss the Amended Complaint and the Court heard oral argument on that motion on May 29, 2014.  After argument, on June 4, 2014, the Court granted Defendants' motion to dismiss but permitted Plaintiff leave to file an amended pleading.

Therefore, on June 25, 2014, Plaintiff filed the Second Amended Complaint.  Defendants again moved to dismiss and the Court held oral argument on October 2, 2014.   During oral argument, at Plaintiff's request, the Court denied Defendants' motion to dismiss as moot and granted Plaintiff leave to file another amended complaint, which it did on October 23, 2014 (the Third Amended Complaint).  The Third Amended Complaint alleges that Defendants were aware that there were substantial and growing delays occurring during the approval processes at the Company's customers which in turn delayed the publication of "DocAlerts" and the time that the Company could record revenue on those alerts. These delays and the inability to record revenue caused a serious "revenue hole" in the first quarter of 2011 and Defendants sought to "fill the gap" by secretly canceling and reissuing DocAlert contracts, thereby recording DocAlert revenue sooner.  In touting the financials for the first quarter of 2011, Defendants failed to disclose that they were achieved only through the canceling and repapering of contracts and that the delays were affecting the Company's ability to timely recognize revenue.

Defendants again moved to dismiss the Third Amended Complaint and the Court heard oral argument on October 18, 2014.  Subsequent to that argument, the Court ordered supplemental briefing on the motion to dismiss the Third Amended Complaint.  Only at that point, on March 13, 2015, did the Court deny Defendants' motion to dismiss and permit the case to proceed.

1    Since that time, while settlement negotiations were proceeding, the Parties served

2    comprehensive discovery requests on each other and, in connection with formal mediation,

3    exchanged categories of documents.  Prior to engaging in that mediation, Lead Counsel reviewed,

4    among other documents, contracts between Epocrates and its customers, including certain contracts

5    that, in Plaintiff's view, had been repapered.  On October 30, 2015, the Parties executed the

6    Settlement Agreement, which is subject to the approval of the Court.  Defendants have denied, and

7    continue to deny, that they did anything wrong.

8    **B.       Settlement Negotiations**

9    Subsequent to the Court's decision on Defendants' motion to dismiss the Third Amended

10   Complaint, the Parties began to discuss potential resolution of the Litigation, and they agreed to

11   retain the Hon. Layn Phillips (Ret.) to mediate the dispute.  As discussed above, before the

12   mediation, the Parties made productions of highly relevant documents, and, after reviewing these

13   documents, exchanged initial and reply mediation briefs.  The Parties met in person before Judge

14   Phillips on June 23, 2015.  During this mediation, the Parties, with the assistance of the mediator,

15   discussed the strengths and weaknesses of the Litigation.  Although the Parties were unable to reach

16   an agreement during the June 23, 2015 mediation, it provided a helpful foundation for subsequent

17   settlement negotiations.  In the weeks following the mediation, the Parties continued to discuss

18   potential resolution and were ultimately presented with a "mediator's proposal" from Judge Phillips

19   that all Parties accepted.  On September 8, 2015, the Parties reached an agreement-in-principle on

20   most of the material terms of the Settlement and executed a term sheet.

21   **C.       Summary of the Proposed Settlement**

22   The Settlement will be funded by a $5,100,000 cash payment by or on behalf of the

23   Defendants, which will be paid into an escrow account as soon as practicable (but no later than 45

24   business days following the Court's preliminary approval of the Settlement).  The detailed terms of

25   the Settlement are set forth in the Stipulation, which is filed herewith.  The $5,100,000 in cash, less

26

27

28

attorneys' fees and any expenses awarded by the Court,[3] including notice and administration expenses, and any tax expenses payable from the Settlement Fund (the "Net Settlement Fund"), will be distributed to Authorized Claimants (*i.e.*, Settlement Class Members who file timely and valid Proof of Claim and Release forms) in accordance with the Plan of Allocation described fully in the Notice of Proposed Settlement of Class Action, Motion for Attorneys' Fees and Expenses, and Settlement Hearing ("Notice"), which is Exhibit A-1 to the Stipulation filed herewith.  The Plan of Allocation, which was drafted with the assistance of a damages consultant, is based on Plaintiff's theory of damages and treats all potential claimants in a fair and equitable fashion.  Each Authorized Claimant will be paid that percentage of the Net Settlement Fund that such Authorized Claimant's claim represents in relation to the total claims of all Authorized Claimants.

As set forth below, the Settlement meets the standards for preliminary approval as it falls well within the range of possible approval, was the product of extensive arm's-length negotiations between experienced counsel, and has no obvious deficiencies.  Notice should also be issued to Settlement Class Members because the notice program is the best practicable under the circumstances.  Finally, the Court should preliminarily certify the Settlement Class.

## III.   ARGUMENT

### A.   The Proposed Settlement Satisfies the Criteria for Preliminary Approval

"The Ninth Circuit has stated that 'there is an overriding public interest in settling and quieting litigation,' and this is 'particularly true in class action suits.'"  *Lundell v. Dell, Inc.*, No. C05-3970 JWRS, 2006 WL 3507938, at *3 (N.D. Cal. Dec. 5, 2006); *see also  In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008) ("there is a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned"); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992); *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th

---

[3] As set forth in the Notice, Lead Counsel will file a written request with the Court for an award of attorneys' fees and expenses incurred in connection with the prosecution of the Litigation as well as a reimbursement to Plaintiff of its reasonable costs and expenses (including lost wages) directly relating to its representation of the Settlement Class.

1   Cir. 1998); *West v. Circle K Stores, Inc.*, No. CIV. S-04-0438, 2006 WL 1652598, at *1 (E.D. Cal.

2   June 13, 2006).

3          Approval of a class action settlement normally proceeds in two stages:  preliminary approval,

4   followed by notice to the class, and then final approval.  *See, e.g.*, *West*, 2006 WL 1652598, at *2.

5   This case is now at the first stage of the process.  Standards governing whether preliminary approval

6   should be granted have "both a procedural and a substantive component."  *Young v. Polo Retail,*

7   *LLC*, No. C-02-4546 VRW, 2006 WL 3050861, at *5 (N.D. Cal. Oct. 25, 2006).  The Court in

8   *Young*, quoting from the *Manual for Complex Litigation* and *Newberg on Class Actions*, explained

9   the procedure as follows:

10          "[i]f the proposed settlement appears to be the product of serious, informed, non-
             collusive negotiations, has no obvious deficiencies, does not improperly grant
11          preferential treatment to class representatives or segments of the class, and falls
             within the range of possible approval, then the court should direct that the notice be
12          given to the class members of a formal fairness hearing . . . ."  *Manual for Complex*
             *Litigation*, Second §30.44 (1985).  In addition, "[t]he court may find that the
13          settlement proposal contains some merit, is within the range of reasonableness
             required for a settlement offer, or is presumptively valid."  *Newberg on Class Actions*
14          §11.25 (1992).

15   2006 WL 3050861, at *5 (omission in original); *see also Satchell v. Fed. Express Corp.*, No. C03-

16   2659 SI, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007) (granting preliminary approval after

17   finding proposed settlement was non-collusive, had no obvious defects, and was within the range of

18   possible settlement approval).  Applying the standards set forth above, the proposed Settlement

19   should be preliminarily approved.

20   **B.     The Settlement Is the Result of a Thorough, Rigorous, and**
                **Adversarial Process**

21

22          The procedural history of this case demonstrates an arm's-length, adversarial relationship

23   between the Parties.  Indeed, the Parties contested three separate motions to dismiss, which entailed

24   extensive briefing (and supplemental briefing) and three oral arguments.  This type of contentious

25   litigation plainly demonstrates that there was no collusion between the Parties, and that they were

26   both well informed of the strengths and weaknesses of the case prior to settlement.

27          The settlement negotiations were also arm's-length and hard-fought, as evidenced by the fact

28   that the Parties hired the Hon. Layn Phillips (Ret.), an experienced, well-respected mediator.  The

1  Parties were only able to reach agreement after exchanging pre-mediation discovery, preparing

2  initial and reply mediation briefs, participating in an all-day in-person mediation with Judge Phillips,

3  and having full and frank discussions concerning the merits of the Litigation.  *See In re Portal*

4  *Software, Inc. Sec. Litig.*, No. C-03-5138 VRQ, 2007 WL 1991529, at *5 (N.D.Cal. June 30, 2007).

5         Finally, it is important to recognize that both Lead Counsel and Defendants' Counsel are

6  highly experienced class action securities litigators.  As such, they are well versed in the issues

7  involved in litigating a securities class action, and fully capable of determining the strengths and

8  weakness of a particular case.  Their decision to settle this case on the aforementioned terms after

9  more than two years of vigorous litigation and fact finding weighs in favor of the Court granting

10  preliminary and final approval.  *See Lundell,* 2006 WL 3507938, at *3-*4; *Gribble v. Cool Transp.,*

11  *Inc.*, No. CV 06-04863 GAF (SHx), 2008 WL 5281665, at *9 (C.D. Cal. Dec. 15, 2008); *Gerardo v.*

12  *Quong Hop & Co.*, No C 08-3953 JF (PVT), 2009 WL 1974483, at *3 (N.D.Cal. Jul. 7, 2009).

13         In sum, the history of this litigation, the selection of Judge Phillips as a mediator, and the

14  informed decision-making of experienced counsel all militate in favor of finding that the Settlement

15  is "the product of serious, informed, non-collusive negotiations."  *Young*, 2006 WL 3050861, at *5

16  (internal quotation marks and citations omitted).

17      **C.    The Settlement Merits Preliminary Approval and Settlement Class**
        **Members Should Be Given Notice and an Opportunity to Be Heard**
18      **Concerning the Terms of the Settlement**

19         "[A]t this preliminary approval stage, the court need only 'determine whether the proposed

20  settlement is within the range of possible approval.'"  *West*, 2006 WL 1652598, at *11 (citation

21  omitted).  This Settlement, which obligates $5,100,000 to be paid by or on behalf of the Defendants,

22  clearly is within such a range and merits consideration by all of the Members of the Class.

23         The fairness and adequacy of the Settlement is further underscored by taking into account the

24  obstacles the Class faced in ultimately succeeding on the merits, as well as the expense and likely

25  duration of the Litigation.  *See Churchill Vill., L.L.C. v. G.E.*, 361 F.3d 566, 575 (9th Cir. 2004)

26  (citing risk, expense, complexity, and likely duration of further litigation as factors supporting final

27  approval of settlement); *Lundell,* 2006 WL 3507938, at *3 ("The likelihood of Plaintiffs' success on

28

1    the merits if the case were to proceed to trial is a key consideration in assessing the fairness,

2    adequacy, and reasonableness of a settlement.").

3         Here, Plaintiff contends that Defendants deliberately and knowingly engaged in a scheme to

4    manipulate the price of Epocrates stock.  More specifically, Plaintiff alleges that Defendants, when

5    confronted with a "gap" in 1Q2011 revenues resulting from issues Epocrates was having in

6    delivering its DocAlert products as a result of regulatory queues at pharmaceutical clients, engaged

7    in a scheme to misrepresent and conceal these issues by cancelling and reissuing these contracts and

8    prematurely recognizing revenue.  Plaintiff further alleges that Defendants touted Epocrates' revenue

9    growth without disclosing how that growth was achieved (through reissuing the contracts).  Plaintiff

10   contends that these false and misleading statements materially inflated the price of Epocrates stock,

11   resulting in damages to Settlement Class Members when the truth was revealed.  Defendants have

12   vehemently contested, and continue to deny, Plaintiff's allegations.

13        If, instead of settling, the Litigation proceeded, Plaintiff would next have to move for class

14   certification, which would involve the use of experts on market efficiency and damages.  Even if

15   class certification were granted, Plaintiff's claims would have to survive both summary judgment

16   and be upheld at trial, at which point the Parties would have hotly debated issues of falsity,

17   materiality, scienter, loss causation, and the proper methodologies for computing damages.

18   Continued litigation would pose significant risks and challenges.

19        As one example, the Parties would likely encounter greater difficulties completing fact

20   discovery than in the typical case.  As noted in the Joint Case Management Statement, "[b]ecause

21   Plaintiff will be seeking [electronically stored information] ESI created as far back as 2010 and

22   Epocrates was subsequently acquired by athenahealth, Plaintiff and Defendants anticipate potential

23   issues regarding the availability of historical ESI from the Class Period."  ECF No. 108 at 6.  As

24   another example, Defendants contend that the stock drop asserted in the Third Amended Complaint

25   is not sufficiently connected to the fraud alleged by Plaintiff to survive a motion for summary

26   judgment or trial on loss causation.  Defendants also contend that even if Plaintiff could prove that

27   the Settlement Class suffered losses from such decline, the recoverable damages, if any, would be far

28   less than Plaintiff asserts.  Finally, the Parties dispute the start of the Settlement Class Period that

1    would be used at summary judgment and at trial.

2         Plaintiff acknowledges the risk in proving damages and recognizes the risk that a jury might

3    not find liability or that Defendants' actions caused losses, or that, even if a jury reached findings

4    favorable to the Settlement Class, it might substantially reduce the amount of recoverable damages.

5    There is no doubt that the case both sides would present at trial would be both complex and nuanced,

6    and would include a "battle of the experts" on damages calculation, isolation of the damages

7    attributable to particular actions by Defendants, as well as proof of scienter and materiality.  The

8    results of the trial would almost certainly not end the Litigation, as one side would likely appeal, and

9    it is quite possible that both sides would do so in the event that the jury found for the Settlement

10   Class, but substantially reduced the damages sought.  In the absence of a settlement, Settlement

11   Class Members would have to wait several more years before they obtained any relief, even

12   assuming they were successful and overcame every obstacle.  "These risks must be considered in

13   assessing the fairness of the Settlement, which guarantees against a result that would leave the

14   Settlement Class without any recovery from Defendant, or with less than the Settlement offers."

15   *Lundell*, 2006 WL 3507938, at *3.  Indeed, "the difficulty Plaintiffs would encounter in proving their

16   claims, the substantial litigation expenses, and a possible delay in recovery due to the appellate

17   process, provide justifications for this Court's approval of the proposed Settlement."  *In re*

18   *Broadwing, Inc. ERISA Litig.*, 252 F.R.D. 369, 373-74 (S.D. Ohio 2006).

19        As the Ninth Circuit has noted:

20        The outcome of this action was by no means a foregone conclusion.  Had Federal
          Plaintiffs continued to litigate, they would have faced a host of potential risks and
21        costs, including . . . high costs associated with lengthy and complex litigation,
          potential loss on summary judgment, and risks associated with trial, should the case
22        progress that far.  Indeed, even a favorable judgment at trial may face post-trial
          motions and even if liability were established, the amount of recoverable damages is
23        uncertain. The Settlement eliminates these and other risks of continued litigation,
          including the very real risk of no recovery after several years of litigation.
24

25   *In re NVIDIA Corp. Driv. Litig.*, No. C-06-06110, 2008 WL 5382544, at *3 (N.D. Cal. Dec. 22,

26   2008).  Taking into account the risks of surviving a summary judgment motion and in proving

27   liability and damages at trial, as well as the looming class certification process, the proposed

28

                                              9

1   $5,100,000 settlement is an extremely good result for the Settlement Class.  As the Ninth Circuit has

2   pointed out, the very essence of settlement is compromise, and a settlement can be acceptable even

3   though it may amount to only a fraction of the potential recovery.  *Linney*, 151 F.3d at 1242.

4        **D.    Members of the Settlement Class Should Be Given an Opportunity to Request Exclusion**

5

6        In addition to giving the Settlement Class notice of the proposed Settlement and of the date

7   and time of the Settlement Hearing, Settlement Class Members should also receive notice of the

8   method for requesting exclusion from the Settlement Class, the time within which they can make

9   such decision, and the manner in which they can advise the Claims Administrator of their decision to

10  request exclusion.  *See* Fed. R. Civ. P. 23(c)(2)(B).  The Notice, annexed to the proposed Notice

11  Order as Exhibit A-1, advises the Settlement Class Members of their right to request exclusion, the

12  consequences of making such a request (*i.e.*, they will not participate in the Settlement, but will

13  retain whatever rights they may have and will not be bound by the Settlement's terms and releases),

14  the method by which they can request exclusion, and the deadline by which they must mail their

15  request for exclusion.  In addition, the Summary Notice (Exhibit A-3 to the Notice Order) advises

16  Settlement Class Members of the deadline for exclusion and how to obtain a copy of the Notice.

17  Providing an opportunity to request exclusion from the Settlement Class satisfies the requirements of

18  Federal Rule of Civil Procedure 23(c)(2)(B).

19       **E.    The Proposed Notice Satisfies Rules 23(d) and (e) and Due Process Requirements**

20       Lead Counsel propose that mailed and published notices be given in the form of the Notice

21  and Summary Notice, attached as Exhibits A-1 and A-3 to the Notice Order.  Notice in the form and

22  in the manner set forth in the Notice Order will fulfill the requirements of Due Process of the U.S.

23  Constitution; comply with Rule 23 of the Federal Rules of Civil Procedure; and inform Settlement

24  Class Members of the Settlement, their right to request exclusion from the Settlement Class, and

25  their opportunity to appear and be heard at the Settlement Hearing.

26       Notice must be "reasonably calculated, under all the circumstances, to apprise interested

27  parties of the pendency of the action and afford them an opportunity to present their objections."

28

1    *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950); *Mendoza v. Tucson Sch.*

2    *Dist. No. 1*, 623 F.2d 1338, 1352 (9th Cir. 1980).  Plaintiff proposes giving notice in two ways: by

3    First-Class Mail, addressed to all Settlement Class Members who can reasonably be identified and

4    located, and by publication of notice in *Investor's Business Daily* and *PRNewsire*.  In addition, the

5    Notice and Proof of Claim and Release form will be posted on the Claims Administrator's website.

6         The form and substance of the notices are also sufficient.  "Notice is satisfactory if it

7    'generally describes the terms of the settlement in sufficient detail to alert those with adverse

8    viewpoints to investigate and to come forward and be heard.'"  *Churchill Vill.*, 361 F.3d at 575

9    (quoting *Mendoza*, 623 F.2d at 1352).  The proposed form of class notice describes in plain English

10   the terms of the Settlement, the considerations that caused Lead Counsel to conclude that the

11   Settlement is fair and adequate, the maximum counsel fees and expenses that will be sought, the

12   procedure for requesting exclusion from the Class, the procedure for objecting to the Settlement, the

13   procedure for participating in the Settlement, and the date and place of the Settlement Hearing.  The

14   Notice will fairly apprise Settlement Class Members of the Settlement and their options with respect

15   thereto, and fully satisfies all Due Process requirements.

16        **F.    The Court Should Preliminarily Approve the Settlement Class**

17        At the Settlement Hearing, the Court will be asked to grant final approval to the

18   Settlement on behalf of the Settlement Class.  For that reason, it is appropriate for the Court to

19   consider, at the preliminary approval stage, whether the certification of the Settlement Class

20   appears to be appropriate.  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998).

21        This case satisfies all requirements for certification of a class and, if the Litigation proceeded

22   towards trial, class certification would be appropriate.  Certainly, in the context of the Proposed

23   Settlement, preliminary certification of the Settlement Class is warranted.[4]  The Ninth Circuit and

24   numerous courts within the Ninth Circuit have held that class actions are to be generally favored in

25   securities fraud actions.  *Blackie v. Barrack*, 524 F.2d 891, 902-03 (9th Cir. 1975).  "[T]he law in the

26

27   [4]  Indeed, "[w]hether trial would present intractable management problems, *see* Rule 23(b)(3)(D), is not a consideration when settlement-only certification is requested, for the proposal is that there be no trial."  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 593 (1997).

28

11

MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT
CASE NO. 13-cv-00945-VC

1   Ninth Circuit is very well established that the requirements of Rule 23 should be liberally construed

2   in favor of class action cases brought under the federal securities laws." *In re THQ, Inc., Sec. Litig.*,

3   No. CV-00-1783AHM(EX), 2002 WL 1832145, at *2 (C.D. Cal. Mar. 22, 2002) (quoting *Schneider*

4   *v. Traweek*, No. CV 88-0905 RG (KX), 1990 WL 132716, at *6 (C.D. Cal. July 31, 1990)); *Yamner*

5   *v. Boich*, No. C-92-20597 RPA, 1994 WL 514035, at *2 (N.D. Cal. Sept. 15, 1994) ("Ninth Circuit

6   favors a liberal use of class actions to enforce federal securities laws").

7        Under Rule 23(a), a class may be certified if it is so numerous that joinder of all members is

8   impracticable; there are questions of law and fact common to the class; the claims or defenses of the

9   representative parties are typical of the claims or defenses of the class; and the representative parties

10   will fairly and adequately protect the interests of the class. *Wolin v. Jaguar Land Rover N. Am.,*

11   *LLC*, 617 F.3d 1168, 1172 (9th Cir. 2010). In addition, the court must find that at least one of the

12   three conditions of Fed. R. Civ. P. 23(b) are satisfied. *Id*. Under subsection (b)(3), the court must

13   also find the questions of law or fact common to the members of the class predominate over any

14   questions affecting only individual members and that a class action is superior to other available

15   methods for the fair and efficient adjudication of the controversy. *Id*.   As set forth below, this

16   Litigation clearly satisfies each of the requirements for the certification of the Settlement Class.

17          **i.**    **The Settlement Class Is Sufficiently Numerous to Warrant Certification**

18        Rule 23(a)(1) requires the class to be so large that joinder of all members is impracticable.

19   The purchasers of Epocrates common stock during the Class Period, and hence members of the

20   Class, number in the thousands. Additionally, the Class Members are located in numerous

21   jurisdictions throughout the United States. A group this large and geographically diverse is too

22   unwieldy to join in a single action.

23          **ii.**    **There Are Substantial Common Questions of Law and Fact**

24        A proposed settlement class has sufficient commonality to justify certification where there

25   are substantial questions of law and fact common to the class. *See Wolin*, 617 F.3d at 1172. Fed. R.

26   Civ. P. 23(a)(2) should be construed permissibly, such that "[a]ll questions of fact and law need not

27   be common to satisfy the rule." *Hanlon*, 150 F.3d at 1019. A class has sufficient commonality where

28   there is "[t]he existence of shared legal issues with divergent factual predicates" or "a common core

1    of salient facts coupled with disparate legal remedies within the class." *Hanlon*, 150 F.3d at 1019;

2    *accord Staton v. Boeing Co.*, 327 F.3d 938, 953 (9th Cir. 2003).

3         Here, there are numerous questions of law and fact common to the Settlement Class,

4    including: (a) whether provisions of the Exchange Act were violated by Defendants' acts as alleged

5    in the Third Amended Complaint; (b) whether documents and public statements issued by

6    Defendants to the investing public misrepresented material facts about the Company and its

7    business; and (c) whether the revelation of the truth about Defendants' alleged misrepresentations

8    and omissions to the investing public resulted in a decline in the price of Epocrates common stock.

9    In the context of the Settlement Class, additional common questions include whether the Settlement

10   is fair, reasonable and adequate; and whether the Settlement should be approved.  Thus, the Class

11   should be preliminarily approved.

12                    **iii.    Plaintiff's Claims Are Typical of Other Settlement Class Members**

13        Like the other Settlement Class Members, Plaintiff purchased Epocrates common stock

14   during the Settlement Class Period, at a time when Defendants' alleged fraud had not been revealed.

15   Plaintiff alleges that Defendants' misrepresentations and omissions resulted in artificial inflation of

16   the price of the Epocrates common stock that Plaintiff purchased and that, upon disclosure of the

17   alleged misrepresentations, the value of the common stock purchased by Plaintiff declined. The other

18   members of the Settlement Class were affected in the same way. Similarly, the interest of Plaintiff in

19   obtaining a fair, reasonable and adequate settlement of the claims asserted is identical to the interests

20   of the remaining Settlement Class Members. Under the proposed Plan of Allocation, Plaintiff will

21   receive the same *pro rata* share of the Settlement Fund as the rest of the Settlement Class.

22   Accordingly, the typicality requirement is met.

23                    **iv.    Plaintiff and Lead Counsel Have Adequately Represented the Settlement**
24                    **Class**

25        Plaintiff has prosecuted this Litigation, negotiated with Defendants, and obtained a

     Settlement representing a significant percentage of the losses allegedly suffered by Settlement Class

26   Members. Moreover, Plaintiff is represented by, highly qualified counsel with extensive experience

27   in the prosecution of securities class actions.  Thus, Plaintiff has fairly and adequately protected and

28

1    advanced the interests of the Settlement Class, and the requirements of Rule 23(a)(4) are met.

2                    **v.     The Predominance and Superiority Requirements Are Satisfied**

3          Under Rule 23(b)(3), a class may be certified if a court finds that common questions of law

4    or fact predominate over individual questions, and that a class action is superior to other available

5    methods for the fair and efficient adjudication of the controversy. Here, the proposed Settlement

6    Class satisfies the requirements of Rule 23(b)(3) in that, as described above, the questions of law or

7    fact common to the members of the Settlement Class clearly predominate over any questions

8    affecting individual members. Moreover, damages suffered by members of the Settlement Class are

9    not sufficient to make it economical to prosecute separate actions in order to recover individual

10   losses sustained as a result of Defendants' alleged violations of the securities laws. *Amchem Prods.,*

11   521 U.S. at 617 ("The policy at the very core of the class action mechanism is to overcome the

12   problem that small recoveries do not provide the incentive for any individual to bring a solo

13   action. . . . A class action solves this problem. . . ."). Accordingly, a class action is superior to other

14   available methods for the fair and efficient adjudication of the controversy.

15         In securities claims, it is common for factual variations among shareholders related to stock

16   transaction dates and sizes, "sophistication of investors and degree of reliance" to exist, but common

17   questions of fact related to misrepresentation claims "will predominate over the individual issues."

18   *Persky v. Turley*, No. 88-1830-PHX-SMM, 1991 WL 329564, at *3 (D. Ariz. Dec. 20, 1991).

19   Additionally, Plaintiff may rely on the fraud-on-the-market presumption of reliance since Epocrates

20   stock was actively traded in an efficient market.  *See Basic Inc. v. Levinson*, 485 U.S. 224, 241-42,

21   246-47 (1988).  Epocrates stock traded on the NASDAQ Global Market, which is presumed to be

22   efficient.  *See, e.g., Lumen v. Anderson*, 280 F.R.D. 451, 459 (W.D. Mo. 2012) ("It would be

23   remarkable for a court to conclude NASDAQ is not an efficient market—which is why '[s]ecurities

24   traded on NASDAQ are often presumed to be traded on an efficient market.'"); *Smilovits v. First*

25   *Solar, Inc.*, 295 F.R.D. 423, 431 (D. Ariz. 2013).  Because the fraud-on-the-market presumption

26   applies, the need to prove individual reliance by each Class Member is eliminated, further supporting

27   predominance.  *See Huberman v. Tag-It Pacific Inc.*, 314 Fed. App'x 59, 62-63 (9th Cir. 2009).

28

## IV.    PROPOSED SCHEDULE OF EVENTS

Plaintiff requests permission to provide notice of the Settlement to Settlement Class Members.  Lead Counsel proposes the following schedule of events:

| | |
|---|---|
| Deadline to mail Notice to Settlement Class Members, publish Summary Notice, and post to website (Notice Order, ¶8(a)-(c)) | 55 business days after entry of Notice Order |
| Deadline to file proof of mailing, publishing and posting (Notice Order, ¶8(d)) | 105 calendar days after entry of Notice Order |
| Settlement Hearing (Notice Order, ¶3) | To be determined by the court; Plaintiff proposes the hearing be set a minimum of 150 calendar days after entry of Notice Order |
| Deadline to file papers in support of Settlement (Notice Order, ¶17) | 35 calendar days prior to Settlement Hearing |
| Deadline to submit objections to Settlement (Notice Order, ¶14) | 21 calendar days prior to Settlement Hearing |
| Deadline to submit requests for exclusion from Settlement Class (Notice Order, ¶11) | 21 calendar days prior to Settlement Hearing |
| Deadline to file papers in further support of final approval of Settlement (Notice Order, ¶14) | 7 calendar days prior to Settlement Hearing |
| Deadline for submitting Proof of Claim and Release forms (Notice Order, ¶13) | 150 calendar days after entry of Notice Order |

## V.    CONCLUSION

Plaintiff respectfully requests that the Court enter the Notice Order: (1) granting preliminary approval of the Settlement; (2) preliminarily certifying the Settlement Class; (3) directing dissemination of the Notice; (4) setting a deadline to submit objections to the Settlement, Plan of Allocation, Lead Counsel's Fee and Expense Award, or the Lead Plaintiff Cost and Expense Award; (5) setting a deadline by which Settlement Class Members may request exclusion from the Settlement Class; (6) setting a deadline for Settlement Class Members to submit completed Proof of Claim and Release forms; and (7) scheduling a date and time for the Settlement Hearing.

DATED:  October 30, 2015

GLANCY PRONGAY & MURRAY LLP

By:   *s/ Joshua L. Crowell*
Lionel Z. Glancy
Robert V. Prongay
Joshua L. Crowell
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone:  (310) 201-9150
Facsimile:  (310) 201-9160
Email: jcrowell@glancylaw.com

Amanda F. Lawrence
David R. Scott
SCOTT+SCOTT, ATTORNEYS AT LAW, LLP
156 South Main Street, P.O. Box 192
Colchester, Connecticut 06415
Telephone:  (860) 537-5537
Facsimile:  (860) 537-4432
Email: david.scott@scott-scott.com

-and-

Beth A. Kaswan
Deborah Clark-Weintraub
Amanda F. Lawrence
The Chrysler Building
405 Lexington Avenue. 40th Floor
New York, New York 10174
Telephone:  (212) 223-6444
Facsimile:  (212) 223-6334
Email:  bkaswan@scott-scott.com

*Attorneys for Lead Plaintiff*

MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT
CASE NO. 13-cv-00945-VC

**PROOF OF SERVICE VIA ELECTRONIC POSTING PURSUANT TO NORTHERN DISTRICT OF CALIFORNIA LOCAL RULES AND LOCAL CIVIL RULE 5-1**

I, the undersigned, say:

I am a citizen of the United States and am employed in the office of a member of the Bar of this Court. I am over the age of 18 and not a party to the within action.  My business address is 1925 Century Park East, Suite 2100, Los Angeles, California 90067.

On October 30, 2015, I caused to be served the following documents:

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

**[PROPOSED] ORDER PRELIMINARILY APPROVING SETTLEMENT AND PROVIDING FOR NOTICE OF PROPOSED SETTLEMENT**

By posting the documents to the ECF Website of the United States District Court for the Northern District of California, for receipt electronically by the parties as reflected on the attached Court's Service List.

And on any non-ECF registered parties:

By U.S. Mail: By placing true and correct copies thereof in individual sealed envelopes, with postage thereon fully prepaid, which I deposited with my employer for collection and mailing by the United States Postal Service. I am readily familiar with my employer's practice for the collection and processing of correspondence for mailing with the United States Postal Service. In the ordinary course of business, this correspondence would be deposited by my employer with the United States Postal Service that same day.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on October 30, 2015, at Los Angeles, California.


*s/ Joshua L. Crowell*
Joshua L. Crowell

## Mailing Information for a Case 3:13-cv-00945-VC Police and Fire Retirement System of the City of Detroit v. Crane et al

### Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Deborah Sager Birnbach**
  dbirnbach@goodwinprocter.com

- **Anne Louise Box**
  abox@scott-scott.com,edewan@scott-scott.com,efile@scott-scott.com

- **Deborah Clark-Weintraub**
  dweintraub@scott-scott.com,efile@scott-scott.com

- **Joshua L Crowell**
  jcrowell@glancylaw.com

- **Hal Davis Cunningham**
  hcunningham@scott-scott.com,efile@scott-scott.com

- **Lionel Z. Glancy**
  info@glancylaw.com,lboyarsky@glancylaw.com,lglancy@glancylaw.com

- **Joseph P. Guglielmo**
  jguglielmo@scott-scott.com,edewan@scott-scott.com,tcrockett@scott-scott.com,efile@scott-scott.com

- **Michael T. Jones**
  mjones@goodwinprocter.com,AGutierrez@goodwinprocter.com,MOdiakosa@goodwinprocter.com,CaseMatters@goodwinprocter.com

- **Beth A Kaswan**
  bkaswan@scott-scott.com

- **Amanda Lawrence**
  alawrence@scott-scott.com

- **Teodora Emilova Manolova**
  tmanolova@goodwinprocter.com

- **Robert Vincent Prongay**
  rprongay@glancylaw.com,info@glancylaw.com,echang@glancylaw.com,bmurray@glancylaw.com

- **Nicholas A Reider**
  nreider@goodwinprocter.com

- **Casey Edwards Sadler**
  csadler@glancylaw.com

### Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

```
Donald              Broggi
Scott  Scott LLP
The Chrysler Building
405 Lexington Avenue
40th Floor
New York, NY 10174
```