LIONEL Z. GLANCY (#134180)
ROBERT V. PRONGAY (#270796)
JOSHUA L. CROWELL (#295411)
GLANCY PRONGAY & MURRAY LLP
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
Email: jcrowell@glancylaw.com

BETH A. KASWAN (*pro hac vice*)
DEBORAH CLARK-WEINTRAUB (*pro hac vice*)
AMANDA F. LAWRENCE (*pro hac vice*)
SCOTT+SCOTT, ATTORNEYS AT LAW, LLP
The Chrysler Building
405 Lexington Avenue, 40th Floor
New York, New York 10174
Telephone: (212) 223-6444
Facsimile: (212) 223-6334

*Attorneys for Lead Plaintiff Police and Fire Retirement System of the City of Detroit and the Class*

[Additional counsel appear on signature page.]

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| POLICE AND FIRE RETIREMENT SYSTEM OF THE CITY OF DETROIT, Individually and On Behalf of All Others Similarly Situated,, <br><br> Plaintiff, <br><br> v. <br><br> ROSEMARY A. CRANE, PATRICK D. SPANGLER, and EPOCRATES, INC., <br><br> Defendants. | Case No. 13-cv-00945-VC <br><br> **PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** <br><br> Hearing Date:  May 12, 2016 <br> Time:  10:00 a.m. <br> Location:  Courtroom 4, 17th Floor <br> Judge:  Hon. Vince Chhabria |

# <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ................................................................................................. 1

ARGUMENT ....................................................................................................................... 2

    I.    The Court Should Grant Final Approval of the Proposed Settlement ...................... 2

        A.    The Applicable Standards Favor Final Approval of Class Action
            Settlements .................................................................................................. 2

        B.    The Proposed Settlement Is Fair, Reasonable, and Adequate ...................... 3

            1.    The Overall Strength of Plaintiff's Case, Including the Risk, Expense,
                Complexity, and Likely Duration of Further Litigation, Supports Final
                Approval of the Settlement ............................................................... 4

                (a)    Proving Scienter, Loss Causation, and Damages Is a Heavy
                        Burden .................................................................................... 4

                (b)    Continued Litigation Would Be Risky and Expensive ......... 5

            2.    The Risks of Achieving Class Action Status and Maintaining That
                Status Throughout Trial Support Approval of the Settlement .......... 6

            3.    The Amount Offered to Settle the Action Represents a Significant
                 Portion of Provable Damages........................................................... 7

            4.    The Amount of Discovery Completed and the Stage of the Proceedings
                Support Approval of the Settlement.................................................. 8

            5.    Experienced Counsel Concur that the Settlement, Which Was
                Negotiated in Good Faith and at Arm's-Length, Is Fair, Reasonable,
                and Adequate.................................................................................... 9

            6.    The Reaction of the Class Members Supports Approval of the
                Settlement ...................................................................................... 10

    II.    The Court Should Finally Certify the Settlement Class ........................................ 10

        A.    Certification Standards Generally ............................................................. 11

        B.    The Settlement Class Satisfies the Requirements of Rule 23(a)................ 11

1.    Numerosity ..................................................................................... 11

2.    Commonality ................................................................................. 12

3.    Typicality ....................................................................................... 12

4.    Adequacy ........................................................................................ 12

C.    The Settlement Class Satisfies the Requirements of Rule 23(b)(3) Because Common Questions Predominate ................................................................ 13

III.    The Plan of Allocation Fairly and Adequately Apportions the Settlement Fund Among Class Members and Thus Should Be Approved ...................................................... 13

IV.    Notice to the Settlement Class Has Complied with Due Process ........................... 14

CONCLUSION ................................................................................................................. 15

1

## <u>**TABLE OF AUTHORITIES**</u>

2

3

<u>CASES</u>

4

*Amchem Prods., Inc. v. Windsor,*
   521 U.S. 591 (1997) ..................................................................................... 11, 13

5

*Basic, Inc. v. Levinson,*
   485 U.S. 224 (1988) .............................................................................................. 6

6

7

*Class Plaintiffs v. City of Seattle,*
   955 F.2d 1268 (9th Cir. 1992) ......................................................................... 2, 13

8

9

*Eisen v. Carlisle & Jacquelin,*
   417 U.S. 156 (1974) ............................................................................................ 15

10

11

*Ellis v. Naval Air Rework Facility,*
   87 F.R.D. 15 (N.D. Cal. Feb. 7, 1980) ................................................................. 9

12

13

*Evans v. Jeff D.,*
   475 U.S. 717 (1986) .............................................................................................. 3

14

15

*Hanlon v. Chrysler Corp.,*
   150 F.3d 1011 (9th Cir. 1998) .......................................................................... 3, 10

16

17

*Hartless v. Clorox Co.,*
   273 F.R.D. 630 (S.D. Cal. 2011) ........................................................................ 13

18

*Hubbard v. BankAtlantic Bancorp, Inc.,*
   688 F.3d 713 (11th Cir. 2012) .............................................................................. 5

19

20

*In re Cendant Corp. Litig.,*
   264 F.3d 201 (3d Cir. 2001) ................................................................................. 7

21

22

*In re Global Crossing Sec. & ERISA Litig.,*
   225 F.R.D. 436 (S.D.N.Y. 2004) ........................................................................ 14

23

*In re Heritage Bond Litig.,*
   No. 02-ML-1475 DT, 2005 WL 1594403 (C.D. Cal. June 10, 2005) ............... 4, 7, 13

24

25

*In re Mego Fin. Corp. Sec. Litig.,*
   213 F.3d 454 (9th Cir. 2000) ........................................................................... 4, 10

26

27

*In re MicroStrategy, Inc. Sec. Litig.,*
   148 F. Supp. 2d 654 (E.D. Va. 2001) ............................................................. 13, 14

28

*In re Nissan Motor Corp. Antitrust Litig.*,
    552 F.2d 1088 (5th Cir. 1977) .................................................................................. 15

*In re Omnivision Techs., Inc.*,
    559 F. Supp. 2d 1036 (N.D. Cal. 2008) ........................................................... 2, 7, 8

*In re Oracle Sec. Litig.*,
    No. C-90-0931-VRW, 1994 WL 502054 (N.D. Cal. June 18, 1994) ................... 13, 14

*In re Painewebber Ltd. P'ships Litig.*,
    171 F.R.D. 104 (S.D.N.Y. 1997) .................................................................................. 9

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*,
    148 F.3d 283 (3d Cir. 1998) ........................................................................................ 8

*In re Syncor ERISA Litig.*,
    516 F.3d 1095 (9th Cir. 2008) ..................................................................................... 6

*In re THQ, Inc., Sec. Litig.*,
    No. CV 00-1783AHM(EX), 2002 WL 1832145 (C.D. Cal. Mar. 22, 2002) ............. 11

*In re Warfarin Sodium Antitrust Litig.*,
    391 F.3d 516 (3d Cir. 2004) ........................................................................................ 8

*In re Warner Commc'ns Sec. Litig.*,
    618 F. Supp. 735 (S.D.N.Y. 1985) .............................................................................. 5

*Linney v. Cellular Alaska P'ship*,
    151 F.3d 1234 (9th Cir. 1998) ................................................................................. 2, 3

*Linney v. Cellular Alaska P'ship*,
    No. C-96-3008 DLJ, 1997 WL 450064 (N.D. Cal. July 18, 1997) ............................. 3

*Nat'l Rural Telecomms. Coop. v. DirecTV, Inc.*,
    221 F.R.D. 523 (C.D. Cal. 2004) ............................................................................. 6, 9

*Officers for Justice v. Civil Serv. Comm'n of City & Cnty. of San Francisco*,
    688 F.2d 615 (9th Cir. 1982) ....................................................................................... 3

*Peters v. Nat'l R.R. Passenger Corp.*,
    966 F.2d 1483 (D.C. Cir. 1992) ................................................................................ 14

*Riker v. Gibbons*,
    No. 3:08-cv-00115-LRH-VPC, 2010 WL 4366012 (D. Nev. Oct. 28, 2010) ......... 9, 14

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*,
    130 S. Ct. 1758 (2010) ............................................................................................. 13

*Torrisi v. Tucson Elec. Power Co.*,
   8 F.3d 1370 (9th Cir. 1993) ............................................................................ 3

*Yamner v. Boich*,
   No. C-92-20597 RPA, 1994 WL 514035 (N.D. Cal. Sept. 15, 1994) ....................................... 11

RULES

Fed. R. Civ. P. 23 ..................................................................................... *passim*

OTHER AUTHORITIES

Manual for Complex Litigation (Third) § 30.42 (1995) ................................................... 9

4 A. Conte & H.B. Newberg, *Newberg on Class Actions* §11:42 (4th ed. 2002) ........................... 9

TO THE CLERK OF THE COURT AND ALL PARTIES AND THEIR RESPECTIVE COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on May 12, 2016, at 10:00 a.m., or as soon thereafter as the matter may be heard in the Courtroom of the Honorable Vince Chhabria, United States District Court Judge, at the United States District Court for the Northern District of California, 450 Golden Gate Avenue, Courtroom 4, 17th Floor, San Francisco, CA 94102, Lead Plaintiff Police and Fire Retirement System of the City of Detroit ("Plaintiff") will, pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, respectfully move the Court to: (1) grant final approval of the Settlement and Plan of Allocation; (2) finally certify the Settlement Class pursuant to Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure, appoint Plaintiff as Settlement Class representative, and appoint Lead Counsel as Settlement Class counsel; (3) find that notice provided to the Settlement Class has satisfied due process; and (4) enter the proposed Judgment and dismiss the Litigation with prejudice.

## MEMORANDUM OF POINTS AND AUTHORITIES

## PRELIMINARY STATEMENT

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Lead Plaintiff Police and Fire Retirement System of the City of Detroit ("Plaintiff") respectfully submits this memorandum in support of final approval of the settlement of this class action. The terms agreed upon by the parties are set forth in the Stipulation of Settlement, which was preliminarily approved by this Court on December 15, 2015 (the "Settlement").[1]

As set forth herein, and in the Joint Declaration of Amanda F. Lawrence and Joshua L. Crowell, filed concurrently herewith ("Joint Decl."), the Settlement was reached after an extensive investigation conducted by Lead Counsel; preparing three amended class action complaints (Dkt. Nos. 36, 65, 81); researching and preparing an opposition to Defendants' motion to dismiss each amended complaint (Dkt. Nos. 44, 72, 85); researching and preparing supplemental briefs in opposition to Defendants' motion to dismiss the third amended complaint (Dkt. Nos. 92, 94); defeating Defendants' motion to dismiss the third amended complaint (Dkt. No. 95); participating in a Rule 26(f) conference

---

[1] Unless otherwise defined, capitalized terms herein have the same meaning as set forth in the Stipulation of Settlement dated October 30, 2015 (Dkt. No. 118) (the "Stipulation").

MOTION FOR FINAL APPROVAL OF SETTLEMENT
Case No. 13-cv-00945-VC

1   with Defendants and filing a joint case management statement (Dkt. No. 108); exchanging initial

2   disclosures; preparing and serving on Defendants a comprehensive set of document requests; engaging

3   in informal document discovery with Defendants in connection with mediation; preparing mediation

4   statements; participating in an all-day mediation session and subsequent settlement negotiations.

5       The merits of the Settlement are demonstrated by, *inter alia*: the significant recovery of

6   $5.1 million in cash – which is 8.5% to 17.0% of Plaintiff's *maximum* estimated damages of

7   approximately $30 million to $60 million; the significant risk of continuing litigation; and the time

8   and expense required to prosecute the case to a final judgment and through any ensuing appeals. The

9   Settlement is especially fair, reasonable, and adequate considering the difficulties Plaintiff would face

10   in obtaining relevant documents from Defendants, many of which were destroyed during the ordinary

11   course of business following the acquisition of Epocrates.

12       For the reasons set forth herein, Plaintiff respectfully request that the Court grant final

13   approval of the Settlement and Plan of Allocation, finally certify the Settlement Class, and enter the

14   proposed Final Judgment and Order of Dismissal with Prejudice as filed on October 30, 2015. Dkt.

15   No. 118-5.[2]

16                  **ARGUMENT**

17   **I.     The Court Should Grant Final Approval of the Proposed Settlement[3]**

18       **A.     The Applicable Standards Favor Final Approval of Class Action Settlements**

19       In deciding whether to approve a proposed settlement pursuant to Rule 23(e), the Ninth Circuit

20   has a "strong judicial policy that favors settlements, particularly where complex class action litigation

21   is concerned." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998); *Class Plaintiffs*

22   *v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992); *see also In re Omnivision Techs., Inc.*, 559 F.

23   Supp. 2d 1036, 1041 (N.D. Cal. 2008) (stating that "the court must also be mindful of the Ninth

24   Circuit's policy favoring settlement, particularly in class action law suits").

25

26   [2] A copy of the Final Judgment and Order of Dismissal with Prejudice is also being filed concurrently herewith as the proposed order.

27   [3] This memorandum focuses primarily upon the legal standards for approval of a class action

28   settlement under Fed. R. Civ. P. 23(e). For a more complete factual recitation than what is set forth herein, Lead Counsel respectfully refers the Court to the Joint Declaration.

There is no prescribed settlement approval procedure to be followed in this Circuit. Rather, it is within the "sound discretion of the district courts to appraise the reasonableness of particular class-action settlements on a case-by-case basis." *Evans v. Jeff D.*, 475 U.S. 717, 742 (1986); *see also Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1025 (9th Cir. 1998). Ultimately, "[a] settlement should be approved if it is 'fundamentally fair, adequate and reasonable.'" *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993) (citation omitted).

Consequently, a settlement hearing is "not to be turned into a trial or rehearsal for trial on the merits," nor should the proposed settlement "be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators." *Officers for Justice v. Civil Serv. Comm'n of City & Cnty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982). To the contrary, "[t]he involvement of experienced class action counsel and the fact that the settlement agreement was reached in arm's length negotiations, after relevant discovery had taken place[,] create a presumption that the agreement is fair." *Linney v. Cellular Alaska P'ship*, No. C-96-3008 DLJ, 1997 WL 450064, at *5 (N.D. Cal. July 18, 1997), *aff'd* 151 F.3d 1234 (9th Cir. 1998).

As explained herein, the Settlement was reached only after hard-fought litigation between experienced counsel on both sides, and it is the product of arm's-length negotiations. Under these circumstances, Plaintiff respectfully submits that the Settlement should be afforded the presumption of fairness and that final approval should be granted.

**B.     The Proposed Settlement Is Fair, Reasonable, and Adequate**

To determine whether a proposed settlement is fair, reasonable, and adequate, a court may consider "some or all" of the following factors: (1) the strength of the plaintiff's case, including the risk, expense, complexity, and likely duration of further litigation; (2) the risk of maintaining class action status through trial; (3) the amount offered in settlement; (4) the extent of discovery completed and the stage of the proceedings; (5) the experience and views of counsel; (6) the presence of a governmental participant; and (7) the reaction of the class members to the proposed settlement. *Linney*, 151 F.3d at 1242; *Hanlon*, 150 F.3d at 1026. "This list is not exclusive and different factors may predominate in different factual contexts." *Torrisi*, 8 F.3d at 1376 (citation omitted). Plaintiff

acknowledges that these factors should be thoroughly explored where, as here, a settlement is reached prior to formal class certification. *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000).

### 1. The Overall Strength of Plaintiff's Case, Including the Risk, Expense, Complexity, and Likely Duration of Further Litigation, Supports Final Approval of the Settlement

Lead Counsel, who have a great deal of experience in litigating and resolving complex securities class actions, carefully evaluated the merits of this case, in light of all of the risks and potential weaknesses, before Plaintiff entered into the Settlement. Indeed, Plaintiff and its counsel conducted a thorough investigation of the claims in this action, whose merits are intertwined with highly technical facts concerning Epocrates' DocAlert contracts and the recognition of revenue under such contracts. In connection with investigating and drafting the amended complaints, Lead Counsel conducted a detailed review of the Company's public filings with the SEC, its press releases and transcripts from its quarterly earnings calls and investment conference appearances, as well as a broad review of media, analyst, and news reports about the Company, and other publicly available data, including trading data relating to the price and trading volume of Epocrates' publicly traded securities. Lead Counsel also interviewed witnesses and consulted with accounting and damages experts. In connection with mediation, Lead Counsel reviewed and analyzed documents produced by Defendants and further consulted with experts.

Thus, while Plaintiff believes that the case is strong based on the substantial research and investigation conducted, it is cognizant of the substantial risk posed to the Settlement Class in continuing this litigation – *e.g.*, that the case might not be certified, or that the Litigation might succumb at the summary judgment stage to attacks regarding loss causation, scienter, or damages. *See In re Heritage Bond Litig.*, No. 02-ML-1475 DT, 2005 WL 1594403, at *7 (C.D. Cal. June 10, 2005) ("It is known from past experience that no matter how confident one may be of the outcome of litigation, such confidence is often misplaced") (citations omitted).

### (a) Proving Scienter, Loss Causation, and Damages Is a Heavy Burden

Obtaining a favorable jury finding on the element of scienter is hardly a foregone conclusion. Plaintiff would have to demonstrate that Defendants materially misrepresented Epocrates' DocAlerts business with deliberate recklessness or knowledge that investors would be deceived. While the Court

---

has ruled that Plaintiff's Third Amended Complaint had pleaded facts raising a strong inference that Defendants acted with scienter, Plaintiff and Lead Counsel are aware of the challenges of actually proving it at trial. Indeed, Defendants have steadfastly denied that they in any way knowingly or recklessly made any materially false or misleading statements or omissions, and it is plausible that a jury could side with Defendants.

Proving that the misstatements caused a significant loss for investors, and that the Settlement Class suffered damages as a result of Defendants' misconduct, also poses a significant challenge. Determining the amount of losses or that Defendants' disclosures actually caused the declines in Epocrates' stock would have required complicated expert testimony and use of methodologies that are debated among economists. "In this 'battle of experts,' it is virtually impossible to predict with any certainty which testimony would be credited, and ultimately, which damages would be found to have been caused by actionable, rather than the myriad nonactionable factors such as general market conditions." *See In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 744-45 (S.D.N.Y. 1985), *aff'd* 798 F.2d 35 (2d Cir. 1986). For these reasons, vigorous challenges to loss causation and damages would pose a significant risk to the Settlement Class at summary judgment, trial, and on appeal. *See Hubbard v. BankAtlantic Bancorp, Inc.*, 688 F.3d 713, 716 (11th Cir. 2012) (affirming judgment for defendants notwithstanding jury verdict due to failure to prove loss causation).

### (b)   Continued Litigation Would Be Risky and Expensive

Regardless of the ultimate outcome, there is no question that further litigation would be expensive and complex. The claims at the heart of this case involved technical issues regarding, *inter alia*: (i) Epocrates' DocAlert sales and contracts, including how such contracts were modified or canceled; (ii) the Company's accounting policies and practices, including how modifications and cancelations of DocAlert contracts impacted revenue recognition; and (iii) the Company's pharmaceutical customers' regulatory approval of DocAlerts, including the impact of expanding delays for such approvals. Given the complexities of the issues involved, if this Litigation continued, Lead Counsel would anticipate reviewing thousands of documents and taking a substantial number of depositions, including the depositions of the Individual Defendants, numerous individuals who were employed by Epocrates, and witnesses employed by the Company's pharmaceutical customers.

1    Following the close of fact discovery, the parties would engage in expert discovery. Lead

2    Counsel, on behalf of Plaintiff and the class, would have to procure expensive and complex expert

3    testimony to prove loss causation and damages. Defendants would present their own expert testimony

4    to demonstrate that the alleged stock drops were not proximately caused by the revelation of the fraud,

5    and/or attempt to demonstrate that at least a portion of the alleged stock drops were attributable to

6    other things unrelated to the revelation of the fraud. Consequently, expert discovery and trial

7    preparation would be expensive and complex.

8    Thus, the likely duration and expense of further litigation also supports a finding that the

9    Settlement is fair, reasonable, and adequate. Even if a class had been certified and Plaintiff's claims

10   survived Defendants' likely motion for summary judgment, continued prosecution of the Action

11   would be complex, expensive, and lengthy with a more favorable outcome than the Settlement highly

12   uncertain. After trial, any appeal would have to be resolved by the Ninth Circuit, one of the busiest

13   circuit courts in the nation. The present value of a certain cash recovery at this time, as opposed to the

14   mere chance for a greater one down the road, supports approval of a settlement that eliminates the

15   expense and delay of continued litigation, as well as the risk of receiving no recovery.

16   At this point, after approximately three years of litigation, Plaintiff is fully aware of the

17   strengths and weakness of its case. Therefore, despite the merits of Plaintiff's case, the risk, expense,

18   complexity, and likely duration of further litigation clearly support approval of the Settlement. *See In*

19   *re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008); *Nat'l Rural Telecomms. Coop. v.*

20   *DirecTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) ("[U]nless the settlement is clearly inadequate,

21   its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results.").

22              **2.      The Risks of Achieving Class Action Status and Maintaining That Status
                          Throughout Trial Support Approval of the Settlement**

23

24   The Settlement Class has been preliminarily certified for settlement purposes only. Dkt.

25   No. 125. In the absence of the Settlement, if this Litigation proceeded, Defendants likely would have

     strongly contested any motion for class certification. Pursuant to *Basic, Inc. v. Levinson*, 485 U.S. 224

26   (1988), to obtain class certification, Plaintiff would need to prove that Epocrates' shares traded in an

27   efficient market during the Class Period such that new, material information was rapidly incorporated

28

into the Company's share price. Plaintiff would have to submit an expert's report on market efficiency, submit another expert report to rebut Defendants' market efficiency expert, as well as take and defend expert depositions on the issue. Further, Defendants would seek any opportunity to have a certified class de-certified. *See Omnivision*, 559 F. Supp. 2d at 1041 (noting that even if a class is certified, "there is no guarantee the certification would survive through trial, as Defendants might have sought decertification or modification of the class").

### 3. The Amount Offered to Settle the Action Represents a Significant Portion of Provable Damages

The Settlement value, totaling approximately $5.1 million in cash and constituting approximately 8.5% to 17.0% of maximum estimated damages of $30 million to $60 million, is not only well within the range of fairness, but it is an objectively excellent recovery. Joint Decl. at ¶ 49. The range of maximum estimated damages is due to the parties' conflicting interpretations of the Court's order denying Defendants' motion to dismiss the Third Amended Complaint (Dkt. No. 95) and the resulting uncertainty regarding the length of the class period and which alleged misstatements survived the pleading stage. Defendants' interpretation of the motion to dismiss order is that the first misstatement occurred on May 10, 2011, shortening the class period to less than three months. On the other hand, Plaintiff has contended that the class period set forth in the Complaint – February 1 through August 9, 2011 – is still viable. This uncertainty itself supports the reasonableness of the Settlement value.

Settlements valued at a much lower percentage of possible damages are routinely approved. *See In re Cendant Corp. Litig.*, 264 F.3d 201, 241 (3d Cir. 2001) (noting that typical recoveries in securities class actions range from 1.6% to 14% of total losses). Moreover, the estimated recovery of 8.5% to 17.0% of potential Class Period damages does not take into account the various defenses put forth by Defendants. If a jury chose to credit Defendants' damages and loss causation experts over Plaintiff's experts, in whole or in part, with respect to whether a significant portion of either or both of the alleged share price declines were causally related to Defendants' alleged misrepresentations and omissions, damages could substantially be reduced or eliminated. *See, e.g., Heritage*, 2005 WL

1594403, at *7 (noting instances where a settlement was rejected by a court only to have the ultimate recovery generated by continued litigation be less than the proposed settlement).

Finally, when compared with the "present value of the damages plaintiffs would likely recover if successful, appropriately discounted for the risk of not prevailing," the Settlement reached in this case is even more valuable. *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 538 (3d Cir. 2004). Where "the trial of this class action would be a long, arduous process requiring great expenditures of time and money on behalf of both the parties and the court," the recovery of a substantial sum certain today, weighs in favor of the Settlement. *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 318 (3d Cir. 1998); *see also Omnivision,* 559 F. Supp. 2d at 1042 ("[T]he Settlement, which offers an immediate and certain award for a large number of potential class members, appears a much better option.").

### 4. The Amount of Discovery Completed and the Stage of the Proceedings Support Approval of the Settlement

Plaintiff and Lead Counsel have sufficient information to evaluate the prospects for this case and assess the adequacy of the Settlement. By the time the Settlement was reached, Lead Counsel had: (1) reviewed and analyzed Epocrates' Class Period and pre-Class Period public filings, annual and quarterly reports, press releases, quarterly earnings call and industry conference transcripts, and other public statements; (2) collected and reviewed a comprehensive compilation of analyst reports and major financial news service reports on the Company; (3) reviewed and analyzed trading data for the Company's stock; (4) consulted extensively with accounting and damages experts; (5) interviewed several former employees of the Company; (6) prepared three amended complaints; (7) prepared three oppositions to Defendants' motions to dismiss, including the successful opposition to Defendants' motion to dismiss the Third Amended Complaint; (8) reviewed Defendants' answer to the Third Amended Complaint (Dkt. No. 101); (9) conducted a Rule 26(f) meet-and-confer with Defendants and submitted a joint case management statement; (10) served on Defendants a comprehensive set of document requests; (11) negotiated and filed a stipulated protective order; (12) reviewed certain documents produced by Defendants pursuant to informal discovery in connection with the mediation; and (13) exchanged initial and reply mediation statements with Defendants. Joint Decl., ¶ 36.

---

Based on the foregoing, Plaintiff and Lead Counsel were in an excellent position to evaluate the strengths and weaknesses of their claims and the substantial risks of continued litigation and to conclude that the Settlement provided a fair, adequate, and reasonable recovery in the best interests of the Settlement Class. Having obtained sufficient information to properly evaluate the Litigation, Lead Counsel have managed to resolve this Litigation on terms very favorable to the Settlement Class without the substantial additional expense, risk, and uncertainty of continued litigation.

### 5. Experienced Counsel Concur that the Settlement, Which Was Negotiated in Good Faith and at Arm's-Length, Is Fair, Reasonable, and Adequate

"[T]he fact that experienced counsel involved in the case approved the settlement after hard-fought negotiations is entitled to considerable weight." *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. Feb. 7, 1980); *see also Nat'l Rural*, 221 F.R.D. at 528 ("'Great weight' is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation.") (quoting *In re Painewebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y. 1997)). Moreover, "a presumption of correctness is said to attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." Manual for Complex Litigation (Third) § 30.42 (1995); *Riker v. Gibbons*, No. 3:08-cv-00115-LRH-VPC, 2010 WL 4366012, at *2 (D. Nev. Oct. 28, 2010) (quoting 4 A. Conte & H.B. Newberg, *Newberg on Class Actions* §11:42 (4th ed. 2002)).

Here, this case has been litigated by experienced and well-respected counsel on both sides, all of whom specialize in the area of securities litigation. Joint Decl. at ¶ 55; Dkt. Nos. 19-3 and 19-4 (Lead Counsel's firm resumes). The parties engaged in substantial settlement negotiations over a period of months. *Id.* at ¶ 31. These negotiations were conducted in good faith, at arm's-length, and were in no way collusive. *Id.*

The parties engaged a highly-regarded mediator, the Hon. Layn Phillips (Ret.). Pursuant to informal discovery agreed upon by the parties in connection with the mediation, Defendants produced a set of documents relating to the merits of the case. *Id.* at ¶ 28. After Lead Counsel had the opportunity to analyze Defendants' documents, the parties exchanged detailed mediation statements – initial and reply statements – addressing the strengths and weaknesses of the claims and defenses at

issue. *Id.* at ¶ 27. Then the parties participated in an all-day mediation session before Judge Phillips. *Id.* at ¶ 28. Although the mediation did not immediately result in a settlement agreement, the parties continued to engage in negotiations. *Id.* at ¶ 31. Subsequently, Judge Phillips made a mediator's proposal to settle the case for $5.1 million, which the parties ultimately accepted. *Id.* The fact that the Settlement amount was proposed by an independent mediator further supports its fairness, reasonableness, and adequacy.

> **6.** **The Reaction of the Class Members Supports Approval of the Settlement**

Pursuant to the Preliminary Approval Order, a total of 10,108 claim packets, comprised of the Notice and the Proof of Claim form, were mailed to potential Settlement Class Members and nominees, the Summary Notice was published in *Investor's Business Daily* and distributed over the *PR Newswire*, and the Settlement documents were posted on a website dedicated to the litigation. *See* Declaration of Michael Joaquin Regarding (A) Mailing of the Revised Notice of Proposed Settlement of Class Action, Motion for Attorneys' Fees and Expenses, and Settlement Hearing and the Proof of Claim and Release Form, (B) Publication of the Summary Notice, (C) Internet Positing, and (D) Requests for Exclusion Received to Date (Dkt. No. 126) ("Joaquin Decl.") at ¶¶ 11, 13, 14.

While the deadline for Settlement Class Members to exclude themselves from the Settlement Class or to object to the Settlement, the Plan of Allocation, and/or the application for attorneys' fees and expenses – April 21, 2016 – has yet to pass, the reaction of the Settlement Class thus has been universally favorable. As of the date of filing this motion, no objections have been received to the Settlement, Plan of Allocation, or any other aspect of the Settlement. Joint Decl. at ¶ 4. In addition, as of the date of filing this motion, there have been no requests for exclusion from the Settlement. Joaquin Decl. at ¶ 15. "[T]he fact that the overwhelming majority of the class willingly approved the offer and stayed in the class presents at least some objective positive commentary as to its fairness." *Hanlon*, 150 F.3d at 1027; *see also Mego*, 213 F.3d at 458.

## II.    The Court Should Finally Certify the Settlement Class

In granting preliminary approval of the Settlement, the Court also preliminarily certified a Settlement Class as set forth in the Stipulation. Dkt. No. 125 at ¶ 4. The Settlement Class consists of all Persons who purchased or otherwise acquired the common stock of Epocrates between February 1,

MOTION FOR FINAL APPROVAL OF SETTLEMENT
Case No. 13-cv-00945-VC

2011 through August 9, 2011, inclusive, and were allegedly damaged thereby. *Id.* Excluded from the Settlement Class are Defendants, members of the immediate families of the Individual Defendants, the officers and directors of the Company during the Settlement Class Period, the legal representatives, heirs, successors, or assigns of any of the foregoing excluded Persons and any entity in which any of the Defendants have or had a controlling interest. *Id.* Also excluded from the Settlement Class are those Persons who submit valid and timely requests for exclusion in accordance with the requirements set forth in the Notice. *Id.* As part of the settlement process, Plaintiff requests that the Court finally certify the Settlement Class for the purpose of administering the Settlement.

## A.   Certification Standards Generally

The Supreme Court has recognized the utility and necessity for certifying settlement classes. *See generally, Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997). In certifying a settlement class, the Court must determine that the criteria established by Rule 23(a) and Rule 23(b)(3) are met. In exercising its judgment concerning certification, Plaintiff respectfully requests that the Court take into account that "the law in the Ninth Circuit is very well established that the requirements of Rule 23 should be liberally construed in favor of class action cases brought under the federal securities laws." *In re THQ, Inc., Sec. Litig.*, No. CV 00-1783AHM(EX), 2002 WL 1832145, at *2 (C.D. Cal. Mar. 22, 2002) (internal citations omitted); *see also Yamner v. Boich*, No. C-92-20597 RPA, 1994 WL 514035, at *2 (N.D. Cal. Sept. 15, 1994) ("The Ninth Circuit favors a liberal use of class actions to enforce federal securities laws.").

## B.   The Settlement Class Satisfies the Requirements of Rule 23(a)

### 1.   Numerosity

The class must be so numerous that joinder of all members is impracticable.  Fed. R. Civ. P. 23(a)(1). This Litigation clearly meets that requirement. Epocrates' common shares were listed on a national exchange and widely traded. At least 10,108 copies of the Notice and Proof of Claim form have been mailed to potential Settlement Class Members and nominees.  Joaquin Decl. at ¶ 11. Thus, there are likely thousands of Settlement Class Members, and the joinder of all of them would be impracticable.

### 2.    Commonality

There also must be questions of either law or fact common to the class. Fed. R. Civ. P. 23(a)(2). Because Defendants' actions at issue consist of statements made by or on behalf of a public company, this requirement is readily met. Questions common to all Class Members include: (1) whether Section 10(b) and Section 20(a) of the Securities Exchange Act of 1934 were violated by Defendants' acts alleged in the Third Amended Complaint; (2) whether Defendants' public statements to the investing public failed to accurately reflect the business, prospects, and financial condition of Epocrates; and (3) whether the revelation of the true facts to the investing public resulted in a decline in the price of Epocrates stock.

### 3.    Typicality

This prong requires that the claims or defenses of the representative parties must be typical of the class's claims. Fed. R. Civ. P. 23(a)(3). Here, Plaintiff's claims are typical of the claims of the Settlement Class. Plaintiff has alleged that Defendants misrepresented Epocrates' DocAlerts business, which resulted in artificial inflation of the price of the Epocrates securities that Plaintiff purchased, and that upon disclosure of the alleged misrepresentations, the value of the securities purchased by Plaintiff declined. Moreover, defenses relating to the sufficiency of Defendants' disclosures and potential alternative reasons for Epocrates' share price decline apply equally to Plaintiff and all other Settlement Class Members. Finally, Plaintiff's interests in obtaining a fair, reasonable, and adequate settlement of the claims asserted are consistent with the interests of the other Settlement Class Members, given that under the proposed Plan of Allocation, Plaintiff will receive the same *pro rata* share of the Settlement fund as the rest of the Settlement Class. Thus, Plaintiff was affected in the same ways as all other Settlement Class Members, satisfying the typicality requirement.

### 4.    Adequacy

The class representative must fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a)(4). Here, for approximately three years, Plaintiff has adequately represented the interests of the Class, and it will continue to do so until the conclusion of the Litigation. Plaintiff selected highly qualified counsel with extensive experience in the prosecution of securities class actions, monitored the status of the Litigation, and regularly communicated with and supervised Lead Counsel.

Joint Decl. at ¶ 66; Dkt. Nos. 19-3 and 19-4 (Lead Counsel's firm resumes). Ultimately, Plaintiff and Lead Counsel have prosecuted this Litigation, negotiated with Defendants, and obtained a proposed Settlement that represents a significant percentage of the losses suffered by Settlement Class Members. Thus, Plaintiff is an adequate class representative for purposes of Rule 23(a).

### C.   The Settlement Class Satisfies the Requirements of Rule 23(b)(3) Because Common Questions Predominate

In addition to satisfying the requirements of Rule 23(a), this Litigation meets the requirements of Rule 23(b)(3). Questions of law or fact common to the Settlement Class Members predominate over questions affecting only individual members of the Class where, as here, the central issues relate to Defendants' public statements and Epocrates' stock price reaction to the revelation of the fraud. Moreover, permitting the claims of the entire Settlement Class to be resolved in a single forum is superior to other available methods of fairly and efficiently adjudicating the controversy. Although the losses to individual Settlement Class Members are significant, for most of them the losses are not sufficiently large to justify the expense of individual actions. *See Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 130 S. Ct. 1758, 1783 (2010) ("When adjudication is costly and individual claims are no more than modest in size, class proceedings may be 'the thing,' *i.e.*, without them, potential claimants will have little, if any, incentive to seek vindication of their rights") (citation omitted). Finally, this case does not present any apparent difficulties in its management as a class action, and, regardless, manageability is deemphasized in the context of class certification for purposes of settlement. *See Hartless v. Clorox Co.*, 273 F.R.D. 630, 638 (S.D. Cal. 2011) (stating that "a district court does not need to determine whether the class action would be manageable under Rule 23(b)(3)(D) as the proposal is that there be no trial") (citing *Amchem*, 521 U.S. at 620).

### III.   The Plan of Allocation Fairly and Adequately Apportions the Settlement Fund Among Class Members and Thus Should Be Approved

"Approval of a settlement, including a plan of allocation, rests in the sound discretion of the court." *Heritage*, 2005 WL 1594403, at *11 (citing *Class Plaintiffs*, 955 F.2d at 1284 (citation omitted)). "To warrant approval, the plan of allocation must also meet the standards by which the . . . settlement was scrutinized – namely, it must be fair and adequate." *In re MicroStrategy, Inc. Sec. Litig.*, 148 F. Supp. 2d 654, 668 (E.D. Va. 2001) (citing *Class Plaintiffs*, 955 F.2d at 1284-85); *In re*

---

MOTION FOR FINAL APPROVAL OF SETTLEMENT
Case No. 13-cv-00945-VC

*Oracle Sec. Litig.*, No. C-90-0931-VRW, 1994 WL 502054, at *1 (N.D. Cal. June 18, 1994). "A plan of allocation that reimburses class members based on the extent of their injuries is generally reasonable." *Oracle*, 1994 WL 502054, at *1. Accordingly, a plan of allocation "fairly treats class members by awarding a pro rata share to every Authorized Claimant, but also sensibly makes interclass distinctions based upon, *inter alia*, . . . the timing of purchases of the securities at issue." *MicroStrategy*, 148 F. Supp. 2d at 669.

Here, the Court has preliminarily approved the Settlement (Dkt. No. 125), including the Plan of Allocation set forth in the revised Notice (Dkt. No. 124-2), which Plaintiff does not seek to modify. Plaintiff now requests that the Court give final approval of the Plan for purposes of administering the Settlement. Pursuant to the Plan, each similarly situated authorized claimant will receive a *pro rata* share of the Net Settlement Fund comprised of cash, plus interest, less attorneys' fees and expenses and Lead Plaintiff's award. Joint Decl. at ¶¶ 38-41.  The Plan was formulated by Lead Counsel, in consultation with a damages expert, with the goal of reimbursing Settlement Class Members in a fair and reasonable manner. Joint Decl. at ¶ 39. For this reason, the Plan has a rational basis, and Plaintiff and Lead Counsel believe that it fairly compensates Settlement Class Members and should be approved. *See In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 462 (S.D.N.Y. 2004) ("When formulated by competent and experienced class counsel, an allocation plan need have only a 'reasonable, rational basis.'"); *Riker*, 2010 WL 4366012, at *5 ("Class counsel has consistently consulted with experts throughout this litigation, and based on these consultations, has determined that the terms agreed upon in the settlement represent a fair, adequate, and reasonable settlement of plaintiffs' claims").

## IV.    Notice to the Settlement Class Has Complied with Due Process

Rule 23(e) provides that "notice of the proposed dismissal or compromise [of a class action] shall be given to all members of the class in such manner as the court directs." The purpose of the notice is to "afford members of the class due process which, in the context of the [R]ule 23(b)(3) class action, guarantees them the opportunity to be excluded from the class action and not be bound by any subsequent judgment." *Peters v. Nat'l R.R. Passenger Corp.*, 966 F.2d 1483, 1486 (D.C. Cir. 1992)

1  (citing *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974)). Here, the Notice program used here,

2  as set by the Preliminary Approval Order, easily meets this standard.

3      The Notice program was carried out by the Claims Administrator, Kurtzman Carson

4  Consultants, LLC ("KCC"), a nationally recognized notice and claims administration firm, under the

5  supervision of Lead Counsel. KCC provided individual notice via first-class mail to each member of

6  the Settlement Class whose address was reasonably ascertainable. Joaquin Decl. at ¶¶ 4-11. In

7  addition, KCC posted the Notice, Stipulation, Proof of Claim, and Preliminary Approval Order on a

8  website dedicated to the Litigation. *Id.* at ¶ 13. And KCC caused the Summary Notice to be

9  transmitted over the *PR Newswire* and published in *Investor's Business Daily*. *Id.* at ¶ 14.

10      The Notice amply describes the terms of the Settlement, the claims at issue, the releases, the

11  process for objecting and opting out of the Settlement, the instructions to make a claim, all the

12  pertinent deadlines, and the time, date, and place of the Settlement hearing. *Id.* at Exh. A (the final

13  Notice). Both a dedicated telephone hotline and a website were established to assist potential Class

14  Members who had questions about the Settlement or the claims process. *Id.* at ¶¶ 12-13. These efforts

15  to inform Class Members of the Settlement, and their rights and obligations associated therewith, are

16  more than sufficient to satisfy due process. *See In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d

17  1088, 1104 (5th Cir. 1977) (holding that notice must contain "an adequate description of the

18  proceedings written in objective, neutral terms, that . . . may be understood by the average absentee

19  class member").

20  **CONCLUSION**

21      For the foregoing reasons, Plaintiff respectfully requests that the Court: (1) grant final approval

22  of the Settlement and Plan of Allocation; (2) finally certify the Settlement Class, appoint Plaintiff as

23  Settlement Class representative, and appoint Lead Counsel as Settlement Class counsel; (3) find that

24  notice provided to the Settlement Class has satisfied due process; and (4) enter the proposed Judgment

25  and dismiss the Litigation with prejudice.

26

27

28

MOTION FOR FINAL APPROVAL OF SETTLEMENT
Case No. 13-cv-00945-VC

Dated: April 7, 2016

**GLANCY PRONGAY & MURRAY LLP**

By:  *s/ Joshua L. Crowell*

Lionel Z. Glancy
Robert V. Prongay
Joshua L. Crowell
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone:  (310) 201-9150
Facsimile:  (310) 201-9160
Email: jcrowell@glancylaw.com

Beth A. Kaswan
Deborah Clark-Weintraub
Amanda F. Lawrence
**SCOTT+SCOTT, ATTORNEYS AT LAW, LLP**
The Chrysler Building
405 Lexington Avenue. 40th Floor
New York, New York 10174
Telephone:  (212) 223-6444
Facsimile:  (212) 223-6334
Email:  bkaswan@scott-scott.com

-and-

Amanda F. Lawrence
David R. Scott
**SCOTT+SCOTT, ATTORNEYS AT LAW, LLP**
156 South Main Street, P.O. Box 192
Colchester, Connecticut 06415
Telephone:  (860) 537-5537
Facsimile:  (860) 537-4432
Email: david.scott@scott-scott.com

*Attorneys for Lead Plaintiff Police and Fire
Retirement System of the City of Detroit and the
Class*

**PROOF OF SERVICE VIA ELECTRONIC POSTING PURSUANT TO NORTHERN DISTRICT OF CALIFORNIA LOCAL RULES AND LOCAL CIVIL RULE 5-1**

I, the undersigned, say:

I am a citizen of the United States and am employed in the office of a member of the Bar of this Court. I am over the age of 18 and not a party to the within action.  My business address is 1925 Century Park East, Suite 2100, Los Angeles, California 90067.

On April 7, 2016, I caused to be served the following documents:

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

**[PROPOSED] FINAL JUDGMENT AND ORDER OF DISMISSAL WITH PREJUDICE; ORDER ON APPLICATION FOR LEAD COUNSEL'S FEE AND EXPENSE AWARD AND THE LEAD PLAINTIFF COST AND EXPENSE AWARD**

By posting the documents to the ECF Website of the United States District Court for the Northern District of California, for receipt electronically by the parties as reflected on the attached Court's Service List.

And on any non-ECF registered parties:

By U.S. Mail: By placing true and correct copies thereof in individual sealed envelopes, with postage thereon fully prepaid, which I deposited with my employer for collection and mailing by the United States Postal Service. I am readily familiar with my employer's practice for the collection and processing of correspondence for mailing with the United States Postal Service. In the ordinary course of business, this correspondence would be deposited by my employer with the United States Postal Service that same day.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on April 7, 2016, at Los Angeles, California.

_s/ Joshua L. Crowell_____
Joshua L. Crowell

# Mailing Information for a Case 3:13-cv-00945-VC Police and Fire Retirement System of the City of Detroit v. Crane et al

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Deborah Sager Birnbach**
  dbirnbach@goodwinprocter.com

- **Anne Louise Box**
  abox@scott-scott.com,edewan@scott-scott.com,efile@scott-scott.com

- **Deborah Clark-Weintraub**
  dweintraub@scott-scott.com,efile@scott-scott.com,aslaughter@scott-scott.com

- **Joshua L Crowell**
  jcrowell@glancylaw.com

- **Hal Davis Cunningham**
  hcunningham@scott-scott.com,efile@scott-scott.com

- **Lionel Z. Glancy**
  info@glancylaw.com,lboyarsky@glancylaw.com,lglancy@glancylaw.com

- **Joseph P. Guglielmo**
  jguglielmo@scott-scott.com,edewan@scott-scott.com,tcrockett@scott-scott.com,efile@scott-scott.com

- **Michael T. Jones**
  mjones@goodwinprocter.com,AGutierrez@goodwinprocter.com,MOdiakosa@goodwinprocter.com,CaseMatters@goodwinprocter.com

- **Beth A Kaswan**
  bkaswan@scott-scott.com

- **Amanda Lawrence**
  alawrence@scott-scott.com,rmcgraw@scott-scott.com,efile@scott-scott.com

- **Teodora Emilova Manolova**
  tmanolova@goodwinprocter.com

- **Robert Vincent Prongay**
  rprongay@glancylaw.com,info@glancylaw.com,echang@glancylaw.com,bmurray@glancylaw.com

- **Nicholas A Reider**
  nreider@goodwinprocter.com

- **Casey Edwards Sadler**
  csadler@glancylaw.com

- **Alexis L. Shapiro**
  ashapiro@goodwinprocter.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

```
Donald              Broggi
Scott  Scott LLP
The Chrysler Building
405 Lexington Avenue
40th Floor
```

New York, NY 10174