LIONEL Z. GLANCY (#134180)
JOSHUA L. CROWELL (#295411)
ROBERT V. PRONGAY (#270796)
GLANCY PRONGAY & MURRAY LLP
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
E-mail: info@glancylaw.com

BETH A. KASWAN (*pro hac vice*)
DEBORAH CLARK-WEINTRAUB (*pro hac vice*)
AMANDA F. LAWRENCE (*pro hac vice*)
SCOTT+SCOTT, ATTORNEYS AT LAW, LLP
The Chrysler Building
405 Lexington Avenue, 40th Floor
New York, New York 10174
Telephone: (212) 223-6444
Facsimile: (212) 223-6334

*Attorneys for Lead Plaintiff Police and Fire Retirement
System of the City of Detroit and the Class*

*[Additional counsel appear on signature page.]*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| POLICE AND FIRE RETIREMENT SYSTEM OF THE CITY OF DETROIT, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> vs. <br><br> ROSEMARY A. CRANE, PATRICK D. SPANGLER, and EPOCRATES, INC., <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |

Case No. 13-cv-00945-VC

**PLAINTIFF'S: (1) NOTICE OF MOTION AND MOTION FOR AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF COSTS AND EXPENSES; AND (2) MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

**Hon. Vince Chhabria**

**DATE: May 12, 2016**
**TIME: 10:00 A.M.**
**COURTROOM: 4, 17th Floor**

1

## TABLE OF CONTENTS

2

Pg.

3

I.      INTRODUCTION ........................................................................................................1

4

II.     FACTUAL AND PROCEDURAL HISTORY OF THE LITIGATION............................2

5

III.    ARGUMENT .............................................................................................................2

6

       A.      The Court Should Award Attorneys' Fees Using the Percentage Method ..............2

7

       B.      An Award of Thirty Percent of the Settlement Fund Created Is Fair and

8

                  Reasonable Based on Numerous Factors .................................................................4

9

             1.      The Result Achieved....................................................................................4

10

             2.      The Risks of Litigation ...............................................................................5

11

             3.      The Skill Required and the Quality of the Work ........................................6

12

             4.      The Contingent Nature of the Fee and the Financial Burden

13

                      Carried by Lead Counsel .............................................................................7

14

              5.      A 30% Fee Award Is Consistent with Fee Awards in Similar

15

                      Complex Class Action Litigations ..............................................................9

16

              6.      Reaction of the Class Supports Approval of the Attorneys' Fees

17

                      Requested ...................................................................................................11

       C.      A Lodestar Cross-Check Affirms Reasonableness of 30% Fee Award.................11

18

       D.      Counsel's Expenses Are Reasonable and Were Necessarily Incurred to

19

                  Achieve the Benefit Obtained................................................................................13

20

       E.      Plaintiff Should Be Awarded Reasonable Costs and Expenses............................14

21

IV.    CONCLUSION.......................................................................................................15

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

Pgs.

CASES

*Antonopulos v. N. Am. Thoroughbreds. Inc.*,
  No. 87-0979 G (CM), 1991 WL 427893 (S.D. Cal. May 6, 1991) .......................10

*Blum v Stenson*,
  465 U.S. 886 (1984)..........................................................................................3, 12

*Camden I Condo. Ass'n, Inc. v. Dunkle*,
  946 F.2d 768 (11th Cir. 1991) ................................................................................2

*Chun-Hoon v. McKee Foods Corp.*,
  716 F. Supp. 2d 848 (N.D. Cal. 2010) ..................................................................12

*Churchill Vill., L.L.C. v. GE*,
  361 F.3d 566 (9th Cir. 2004) ..................................................................................6

*Cicero v. DirecTV, Inc.*,
  No. EDCV, 07-1182, 2010 WL 2991486 (C.D. Cal. July 27, 2010) ......................9

*Craft v. Cty. of San Bernardino*,
  624 F. Supp. 2d 1113 (C.D. Cal. 2008) ..................................................................9

*Fernandez v. Victoria Secret Stores, LLC*,
  No. CV 06-04149 (MMM) (SHx), 2008 WL 8150856 (C.D. Cal. July 21, 2008) ..........10, 11

*Garner v. State Farm Mut. Auto. Ins. Co.*,
  No. CV 08-1365 CW, 2010 WL 1687829 (N.D. Cal. Apr. 22, 2010) ...................10

*Glass v. UBS Fin. Servs., Inc.*,
  331 Fed. Appx. 452 (9th Cir. 2009) ........................................................................3

*Gustafson v. Valley Ins. Co.*,
  No. CV 01-1575-BR, 2004 WL 2260605 (D.Or. Oct. 6, 2004) .............................6

*Harris v. Marhoefer*,
  24 F.3d 16 (9th Cir. 1994) ....................................................................................13

*Hensley v. Eckerhart*,
  461 U.S. 424 (1983) ................................................................................................4

*Hicks v. Morgan Stanley*,
  No. 01 Civ. 10071, 2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005) .......................14

*IBEW Local 697 Pension Fund v. Int'l Game Tech., Inc.*,
  No. 3:09-cv-00419-MMD-WGC, 2012 WL 5199742 (D. Nev. Oct. 19, 2012)......7

*In re Activision Sec. Litig.*,
  723 F. Supp. 1373 (N.D. Cal. 1989) .............................................................4, 9, 10

*In re BankAtlantic Bancorp, Inc.*,
  No. 07-61542-Civ., 2011 WL 1585605 (S.D. Fla. Apr. 25, 2011) .........................8

*In re CV Therapeutics, Inc. Sec. Litig.*,
  No. C 03-3709 SI, 2007 WL 1033478 (N.D. Cal. Apr. 4, 2007) ...........................................10

*In re DJ Orthopedics, Inc. Sec. Litig.*,
  No. 01-CV-2238-K (RBB), 2004 WL 1445101 (S.D. Cal. June 21, 2004).............................4

*In re Equity Funding Corp. of Am. Sec. Litig.*,
  438 F. Supp. 1303 (C.D. Cal. 1977) ...............................................................................................7

*In re Heritage Bond Litig.*,
  No. 02-ML-1475, 2005 WL 1594389 (C.D. Cal. June 10, 2005) ................................5, 6, 10

*In re Ikon Office Solutions, Inc. Sec. Litig.*,
  194 F.R.D. 166 (E.D. Pa. 2000).......................................................................................................5

*In re Immune Response Sec. Litig.*,
  497 F. Supp. 2d 1166 (S.D. Cal. 2007) .............................................................................6, 7, 14

*In re ITT Educ. Servs., Inc. Sec. Litig. (Indiana)*,
  No. 1:14-cv-01599-TWP-DML, 2016 WL 1162534 (S.D. Ind. Mar. 24, 2016) ...................12

*In re King Res. Co. Sec. Litig.*,
  420 F. Supp. 610 (D. Colo. 1976).....................................................................................................7

*In re McDonnell Douglas Equip. Leasing Sec. Litig.*,
  842 F. Supp. 733 (S.D.N.Y. 1994)..................................................................................................13

*In re Media Vision Tech. Sec. Litig.*,
  913 F. Supp. 1362 (N.D. Cal. 1996) ..............................................................................................13

*In re Mego Fin. Corp. Sec. Litig.*,
  213 F.3d 454 (9th Cir. 2000) ...........................................................................................................10

*In re Nuvelo, Inc. Sec. Litig.*,
  No. C 07-04056 CRB, 2011 WL 2650592 (N.D. Cal. July 6, 2011) .......................................9

*In re OmniVision Techs., Inc.*,
  559 F. Supp. 2d 1036 (N.D. Cal. 2008) .......................................................3, 4, 5, 6, 9, 13

*In re Pacific Enter. Sec. Litig.*,
  47 F.3d 373 (9th Cir. 1995) .............................................................................................................10

*In re Portal Software, Inc. Sec. Litig.*,
  No. C-03-5138 VRW, 2007 WL 4171201 (N.D. Cal. Nov. 26, 2007) ...................................11

*In re Prudential-Bache Energy Income P'ships Sec. Litig.*,
  No. 888, 1994 WL 202394 (E.D. La. May 18, 1994) ..............................................................7

*In re Rite Aid Corp. Sec. Litig.*,
  396 F.3d 294 (3d Cir. 2005) ............................................................................................................11

*In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*,
  724 F. Supp. 160 (S.D.N.Y. 1989) ..................................................................................................4

*In re Veritas Software Corp. Sec. Litig.*,
 No. C-03-0283 MMC, 2005 WL 3096079 (N.D. Cal. Nov. 15, 2005)
 *vacated in part on other grounds*, 496 F.3d 962 (9th Cir. July 25, 2007) ..............................12

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*,
 19 F.3d 1291 (9th Cir. 1994) ("*WPPSS*") ....................................................................3, 5, 7

*Keith v. Volpe*,
 501 F. Supp. 403 (C.D. Cal. 1980) ........................................................................................12

*Keller v. Nat'l Collegiate Athletic Ass'n (NCAA)*,
 Case No. 4:09-cv-1967 CW, 2015 WL 5005901 (N.D. Cal. Aug. 19, 2015) ........................10

*Kirchoff v. Flynn*,
 786 F.2d 320 (7th Cir. 1986) ...................................................................................................4

*Lindy Bros. Builders, Inc. of Phila. v. Am. Radiator & Standard Sanitary Corp.*,
 540 F.2d 102 (3d Cir. 1976) .....................................................................................................5

*Patel v. Axesstel, Inc.*,
 No. 3:14-CV-1037-CAB-BGS, 2015 WL 6458073 (S.D. Cal. Oct. 23, 2015) .....................12

*Paul, Johnson, Alston & Hunt v. Graulty*,
 886 F.2d 268 (9th Cir. 1989) ...................................................................................................3

*Razilov v. Nationwide Mut. Ins. Co.*,
 No. 01-CV-1466-BR, 2006 WL 3312024 (D.Or. Nov. 13, 2006)..........................................14

*Six Mexican Workers v. Ariz. Citrus Growers*,
 904 F.2d 1301 (9th Cir. 1990) .................................................................................................3

*Swedish Hosp. Corp. v. Shalala*,
 1 F.3d 1261 (D.C. Cir. 1993) ...................................................................................................2

*Thornberry v. Delta Air Lines, Inc.*,
 676 F.2d 1240 (9th Cir. 1982), *cert. granted, judgment vacated*,
 461 U.S. 952 (1983) ...............................................................................................................13

*Torrisi v. Tucson Elec. Power Co.*,
 8 F.3d 1370 (9th Cir. 1993) ......................................................................................................3

*Vedachalam v. Tata Consultancy Services Ltd.*,
 No. C 06-0963 CW, 2013 WL 3941319 (N.D. Cal. July 18, 2013) .......................................10

*Vincent v. Hughes Air W., Inc.*,
 557 F.2d 759 (9th Cir. 1977) ...................................................................................................2

*Vizcaino v. Microsoft Corp.*,
 290 F.3d 1043 (9th Cir. 2002) ............................................................................................3, 12

*Weeks v. Kellogg Co.*,
 No. CV 09-08102 (MMM) (RZx), 2013 WL 6531177 (C.D. Cal. Nov. 23, 2013) ...............10

**STATUTES, RULES AND REGULATIONS**

15 U.S.C. §78u-4(a)(4) ............................................................................................13, 14

**OTHER AUTHORITIES**

Richard A. Posner, ECONOMIC ANALYSIS OF LAW §21.9, at 534-35 (3d ed. 1986).........................7

MANUAL FOR COMPLEX LITIGATION, Fourth, §14.121 at 187 (2004)..............................................2

TO:     ALL PARTIES AND THEIR RESPECTIVE COUNSEL OF RECORD

PLEASE TAKE NOTICE that on May 12, 2016 at 10:00 a.m., or as soon thereafter as the matter may be heard in the Courtroom of the Honorable Vince Chhabria, United States District Court Judge, at the United States District Court for the Northern District of California, 450 Golden Gate Avenue, San Francisco, CA 94102, Plaintiff Police and Fire Retirement System of the City of Detroit ("Plaintiff") will respectfully move for an award of attorneys' fees and the reimbursement of costs and expenses as well as an award to Plaintiff.  The motion is based upon the Memorandum of Points and Authorities in Support of Plaintiff's Motion for an Award of Attorneys' Fees and Reimbursement of Costs and Expenses, the Joint Declaration of Amanda F. Lawrence and Joshua L. Crowell ("Joint Decl.") submitted herewith, the Stipulation of Settlement dated October 30, 2015 (the "Stipulation"), and all other pleadings and matters of record.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.     INTRODUCTION

Plaintiff and its counsel have achieved an award of $5,100,000 in cash for the benefit of the Class[1] in this hard-fought litigation.   This Settlement represents an excellent recovery for the Class under the circumstances.  In the absence of a settlement, this litigation would likely have continued for many years, through class certification, complete fact discovery, expert discovery, summary judgment, trial, and likely appeals.  Plaintiff and its counsel faced substantial obstacles in proving liability and damages, yet nevertheless reached a timely and meaningful resolution for the Class.

Settlement here was achieved only after substantial litigation and "back and forth" that lasted over two years.   During that time, Plaintiff's counsel ("Lead Counsel") vigorously prosecuted the Action.  Those litigation efforts included:  (1) reviewing the public filings, annual reports, press releases, and other public statements as well as analyst reports of Epocrates, Inc.

---

[1]   Unless otherwise defined, all capitalized terms have the meanings ascribed to them in the Stipulation.

("Epocrates"); (2) using this information to file the initial complaint; (3) consulting with an outside investigator to speak to former employees or "confidential witnesses," in some cases multiple times; (4) drafting three separate amended complaints; (5) successfully defeating Defendants' motion to dismiss after numerous rounds of briefing and oral argument; (6) consulting with experts regarding liability and damages; (7) preparing and serving written discovery; (8) reviewing and analyzing numerous pages of documents produced in pre-mediation discovery; (9) fully evaluating the strengths and weaknesses of Plaintiff's claims; and (10) engaging in hard-fought settlement negotiations, including mediation with the Honorable Layn R. Phillips, a former federal court judge with extensive experience and expertise in the mediation of complex actions.   Joint Decl. ¶36.   The information gleaned from this process enabled Plaintiff to set forth allegations with specificity, including identifying particular practices and conduct alleged to be false and misleading, and, ultimately, to resolve the case successfully for the Class.  Notably, Lead Counsel undertook all of these efforts on a fully contingent basis.

## II.     FACTUAL AND PROCEDURAL HISTORY OF THE LITIGATION

The Joint Declaration is an integral part of this submission.  The Court is respectfully referred to it for a detailed description of the factual and procedural history of the litigation, the claims asserted, the settlement negotiations, and the numerous risks and uncertainties presented in this litigation.

## III.    ARGUMENT

### A.      The Court Should Award Attorneys' Fees Using the Percentage Method

For their efforts in creating a common fund for the benefit of the Class, Lead Counsel seek a reasonable percentage of the fund recovered as attorneys' fees.  The percentage method of awarding fees has become an accepted, if not the prevailing, method for awarding fees in common fund cases in this Circuit and throughout the United States.

It has long been recognized that an attorney who establishes a fund is entitled to recover fees from that same fund.  *Vincent v. Hughes Air W., Inc.*, 557 F.2d 759, 769 (9th Cir. 1977).  The purpose of this doctrine is to avoid unjust enrichment so that "those who benefit from the

creation of the fund should share the wealth with the lawyers whose skill and effort helped create it." *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1300 (9th Cir. 1994) ("*WPPSS*").[2]

In *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984), the Supreme Court recognized that "under the 'common fund doctrine'" a reasonable fee may be based "on a percentage of the fund bestowed on the class." In this Circuit, the District Court has discretion to award fees in common fund cases based on either the so-called lodestar/multiplier method or the percentage-of-the-fund method. *WPPSS*, 19 F.3d at 1296. In *Paul, Johnson*, 886 F.2d 268, *Six Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301 (9th Cir. 1990), *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370 (9th Cir. 1993), and *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002), the Ninth Circuit expressly approved the use of the percentage method in common fund cases.[3]

District Courts in this Circuit have almost uniformly shifted to the percentage method in awarding fees in representative actions. *See Glass v. UBS Fin. Servs., Inc.*, 331 Fed. Appx. 452, 456-57 (9th Cir. 2009) (overruling objection to use of percentage-of-the-fund approach); *Vizcaino*, 290 F.3d at 1047; *In re OmniVision Techs., Inc.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2008).

There are several reasons why courts endorse the percentage method of awarding attorneys' fees. First, the percentage method directly aligns the interests of counsel with those they represent because it gives plaintiffs' counsel a strong incentive to obtain the maximum

---

[2] In *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 271 (9th Cir. 1989), the Ninth Circuit explained the principle underlying fee awards in common fund cases: "it is well settled that the lawyer who creates a common fund is allowed an **extra** reward, beyond that which he has arranged with his client, so that he might share the wealth of those upon whom he has conferred a benefit. The amount of such a reward is that which is deemed 'reasonable' under the circumstances." (Bold emphasis added).

[3] Moreover, supporting authority for the percentage method in other circuits is overwhelming. In fact, two circuits have ruled that the ***percentage method is to be used in common fund cases***. *Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261 (D.C. Cir. 1993); *Camden I Condo. Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 774-75 (11th Cir. 1991). *See also* MANUAL FOR COMPLEX LITIGATION, Fourth, §14.121 at 187 (2004) ("the vast majority of courts of appeals now permit or direct district courts to use the percentage-fee method in common-fund cases").

possible recovery in the shortest time and by the most efficient means.  *Id.*; *Kirchoff v. Flynn*, 786 F.2d 320, 325-26 (7th Cir. 1986) ("The contingent fee uses private incentives rather than careful monitoring to align the interests of lawyer and client.").  Second, the percentage method provides predictability and ensures that protracted fee proceedings do not cause undue delay for class members.  *Kirchoff*, 786 F.2d at 325-26.  Third, the percentage method is consistent with the practice in the private legal marketplace where often attorneys and their clients negotiate percentage contingency agreements.  Such arrangements provide an incentive to counsel to maximize the client's recovery, while at the same time assuring counsel of fair compensation for the great risks such cases involve.  They also ensure that the client will not pay a disproportionate fee for a win, ***or any fee for a loss***.  Finally, as one court has stated, the percentage method is "bereft of largely judgmental and time-wasting computations of lodestars and multipliers."  *In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*, 724 F. Supp. 160, 170 (S.D.N.Y. 1989); *see also In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1378 (N.D. Cal. 1989) (lodestar/multiplier method "adds to the work load of already overworked district courts").

Therefore, Lead Counsel respectfully ask that an award should be made here on a percentage basis.

**B.    An Award of Thirty Percent of the Settlement Fund Created Is Fair and Reasonable Based on Numerous Factors**

Lead Counsel submit that, as the factors discussed below demonstrate, attorneys' fees of 30% of the fund recovered for the Class are reasonable under the circumstances of this case and should be approved.

**1.    The Result Achieved**

Courts have consistently recognized that the result achieved is an important factor to be considered in making a fee award.  *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) ("most critical factor is the degree of success obtained"); *Omnivision*, 559 F. Supp. 2d at 1046; *In re DJ Orthopedics, Inc. Sec. Litig.*, No. 01-CV-2238-K (RBB), 2004 WL 1445101, at *3 (S.D. Cal. June 21, 2004).

1    Here, a Settlement Fund of $5,100,000 has been obtained through the efforts of Lead

2    Counsel without the necessity and risk of summary judgment, trial, and appeals.  The Settlement

3    amount is approximately 8.5% to 17.0% of maximum estimated damages of $30 million to

4    $60 million.[4]  Joint Decl. ¶49.  This is an excellent result given the disputes over scienter, loss

5    causation, and the parameters of the Class Period discussed below.  *Id*.  When viewed in this

6    context, it cannot be disputed that Lead Counsel obtained an excellent result for the Class.

7    **2.      The Risks of Litigation**

8    Numerous cases have recognized that risk is an important factor in determining a fair fee

9    award.  *See, e.g.*, *Omnivision*, 559 F. Supp. 2d at 1047; *WPPSS*, 19 F.3d at 1299-301; *Lindy*

10   *Bros. Builders, Inc. of Phila. v. Am. Radiator & Standard Sanitary Corp.*, 540 F.2d 102, 117 (3d

11   Cir. 1976).  Uncertainty that an ultimate recovery would be obtained is highly relevant in

12   determining risk.  *WPPSS*, 19 F.3d at 1302; *In re Heritage Bond Litig.*, No. 02-ML-1475, 2005

13   WL 1594389, at *14 (C.D. Cal. June 10, 2005) ("The risks assumed by Class Counsel,

14   particularly the risk of non-payment or reimbursement of expenses, is a factor in determining

15   counsel's proper fee award.").

16   As set forth in the Joint Declaration, substantial risks and uncertainties were present from

17   the outset of this litigation that made it far from certain that any recovery for the Class would be

18   obtained.  While securities class actions have always carried significant risks, post-PSLRA

19   rulings make it clear that the risk of no recovery (and hence no fee) has increased exponentially.

20   This increased risk of dismissal has been recognized by courts.  *See, e.g.*, *In re Ikon Office*

21   *Solutions, Inc. Sec. Litig.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000)("securities actions have become

22   more difficult from a plaintiff's perspective in the wake of the PSLRA").  Had the Action gone

23   forward, there existed numerous risks due to uncertainties concerning liability and damages in

24

25

26   _____

    [4] As explained in Section I.B.3 of Plaintiff's motion for final approval of the proposed

27   Settlement, the range of maximum estimated damages is due to the parties' conflicting
    interpretations of the Court's order denying Defendants' motion to dismiss the Third Amended
    Complaint (ECF No. 95) and the resulting uncertainty regarding the length of the Class Period

28   and which alleged misstatements survived the pleading stage.

1    addition to the risk that even if Lead Counsel were successful in proving both liability and

2    damages at trial, recovery would be delayed through years of appeal.

3        Especially prevalent in this case was the risk involved in proving scienter.  While Lead

4    Counsel and Lead Plaintiff continue to maintain that Defendants violated the securities laws,

5    they are also aware of the fact that Defendants were prepared to hotly contest Plaintiff's ability to

6    prove scienter at trial.  *See, e.g.*, *Churchill Vill., L.L.C. v. GE*, 361 F.3d 566, 576 (9th Cir. 2004);

7    *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1172 (S.D. Cal. 2007).  Indeed, this

8    Court twice dismissed the Action on scienter grounds.

9        Lead Counsel is also aware of the difficulty in establishing damages at later phases of the

10   case, as Defendants argued that the stock drop alleged was not sufficiently connected to the fraud

11   set forth by Plaintiff to survive summary judgment or trial on loss causation grounds.  The

12   Parties also fiercely disputed the amount of recoverable damages (if any) that would exist if the

13   case prevailed and, importantly, the start of the Class Period that would be used at later phases.

14   If Defendants prevailed in their selection of a start date, the damages potentially recoverable

15   would diminish substantially.  Joint Decl. ¶48.

16       In light of the foregoing, it cannot be disputed that Lead Counsel undertook a risky

17   proposition when they accepted this case on a contingency basis.  Likewise, there is no question

18   that, if this case had not settled, Lead Counsel faced the substantial risk of many more years of

19   litigation with no guarantee of any compensation.  Accordingly, this factor strongly supports the

20   requested fee.

21            **3.    The Skill Required and the Quality of the Work**

22       The successful prosecution of these complex claims requires the participation of highly

23   skilled and specialized attorneys.  *See Heritage Bond*, 2005 WL 1594389, at *12 ("The

24   experience of counsel is also a factor in determining the appropriate fee award."); *Gustafson v.*

25   *Valley Ins. Co.*, No. CV 01-1575-BR, 2004 WL 2260605, at *2 (D.Or. Oct. 6, 2004);

26   *Omnivision*, 559 F. Supp. 2d at 1047.  From the outset, Lead Counsel engaged in a significant

27   effort to obtain the maximum recovery for the Class.  Lead Counsel's thorough investigation

28

uncovered evidence that ultimately defeated Defendants'(third) motion to dismiss.  As a result of surviving the attacks on the adequacy of the complaint and subsequent discovery efforts, Lead Counsel were able to negotiate a settlement they believe is fair under all the circumstances.  The skill demonstrated by Lead Counsel supports the requested fee.[5]

### 4. The Contingent Nature of the Fee and the Financial Burden Carried by Lead Counsel

A determination of a fair fee must include consideration of the contingent nature of the fee.  "It is an established practice in the private legal market to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases."  *See WPPSS*, 19 F.3d at 1299 (citing Richard A. Posner, ECONOMIC ANALYSIS OF LAW §21.9, at 534-35 (3d ed. 1986)).

Courts have consistently recognized that the risk of receiving little or no recovery is a major factor in considering an award of attorneys' fees.  For example, in awarding counsel's attorneys' fees in *In re Prudential-Bache Energy Income P'ships Sec. Litig.*, the court noted the risks that plaintiffs' counsel had taken:

> Counsel's contingent fee risk is an important factor in determining the fee award.  Success is never guaranteed and counsel faced serious risks since both trial and judicial review are unpredictable.  Counsel advanced all of the costs of litigation, a not insubstantial amount, and bore the additional risk of unsuccessful prosecution.

*Id.*, No. 888, 1994 WL 202394, at *6 (E.D. La. May 18, 1994).  *See also IBEW Local 697 Pension Fund v. Int'l Game Tech., Inc.*, No. 3:09-cv-00419-MMD-WGC, 2012 WL 5199742, at *4 (D. Nev. Oct. 19, 2012); *WPPSS*, 19 F.3d at 1299-300; *Immune Response*, 497 F. Supp. 2d at 1176-76; *In re Broadcom Corp. Sec. Litig.*, No. SACV 01-275 DT (MLGx), Order Granting

---

[5]    The quality of opposing counsel is also important in evaluating the quality of the work done by plaintiffs' counsel.  *See, e.g.*, *In re Equity Funding Corp. of Am. Sec. Litig.*, 438 F. Supp. 1303, 1337 (C.D. Cal. 1977); *In re King Res. Co. Sec. Litig.*, 420 F. Supp. 610, 634 (D. Colo. 1976).  Lead Counsel were opposed in this litigation by counsel from a large law firm with a well-deserved reputation for vigorous advocacy on behalf of its clients.  Lead Counsel are likewise national firms that specialize in shareholder and other complex class representation.  Joint Decl. ¶55.  It simply cannot be disputed that this factor weighs in favor of the requested fee.

1   Lead Counsel's Motion for Approval of Lead Counsel's Application for Award of Attorneys'

2   Fees and Reimbursement of Expenses, at 13 (C.D. Cal. Sept. 12, 2005)(attached as Ex. 5 to Joint

3   Decl.); *Kriegel v. Pacific Scientific Co.*, No. CV 98-4163 MMM (JGx), Order Approving

4   Settlement Agreement; Granting Plaintiffs' Application for an Award of Attorneys' Fees;

5   Directing Plaintiffs to File Additional Documentation in Support of Application for

6   Reimbursement of Costs and Expenses; and Granting Request for Reimbursement of Class

7   Representatives for Time and Expenses, at 15-16 (C.D. Cal. May 6, 1999)(attached as Ex. 6 to

8   Joint Decl.).

9   These risks are not illusory.  There are numerous class actions in which plaintiffs'

10   counsel expended thousands of hours, and yet received no remuneration whatsoever despite their

11   diligence and expertise.  As this Court is well aware, subsequent to the passage of the PSLRA, a

12   high percentage of cases in this Circuit have been dismissed at the pleading stage in response to

13   defendants' arguments that the complaints do not meet the PSLRA's strict pleading standards.

14   Nor do the risks end at the motion to dismiss stage.  In fact, even when a plaintiff is successful at

15   trial, payment is not guaranteed.  *See In re BankAtlantic Bancorp, Inc.*, No. 07-61542-Civ., 2011

16   WL 1585605 (S.D. Fla. Apr. 25, 2011) (granting judgment as a matter of law for defendants after

17   jury returned verdict for plaintiffs).

18   The risks in this case were no different.  Because the fee in this matter was entirely

19   contingent, the only certainty was that there would be no fee without a successful result and that

20   such a result would only be realized after significant amounts of time, effort and expense had

21   been incurred.  Indeed, thus far, Lead Counsel have received no compensation for their efforts

22   during the course of this litigation.  Absent this Settlement, there was a sizeable risk that, at the

23   end of the day, Class Members, as well as their counsel, would obtain no recovery.  As further

24   discussed below, Lead Counsel have risked non-payment of $134,066.86 in expenses and over

25   $1.78 million in attorney time expended on this matter, knowing that if their efforts were not

26   successful, no fee would be paid and that they would not recoup their expenses.   Accordingly,

27   this factor plainly supports the requested fee award.

28

### 5. A 30% Fee Award Is Consistent with Fee Awards in Similar Complex Class Action Litigations

While the Ninth Circuit recognizes 25% of a fund recovered for the benefit of a class as the "benchmark" for fee awards in common fund cases, the reality is that "in most common fund cases, the award exceeds that benchmark." *OmniVision*, 559 F. Supp. 2d at 1047-48. *See also Int'l Game Tech*, 2012 WL 5199742, at *4 ("the benchmark should be thirty percent rather than the twenty-five percent recommended"). Courts in this District, in fact, have been clear that, for "relatively small" common fund settlements, ***the benchmark is at approximately 30% of the fund***. In *In re Nuvelo, Inc. Sec. Litig.*, No. C 07-04056 CRB, 2011 WL 2650592, at *2 (N.D. Cal. July 6, 2011) (Breyer, J.), this Court awarded 30% of the net settlement fund for an $8.9 million settlement, citing to cases from this Circuit where awards of between 30% and 33% were found. *See, e.g., Cicero v. DirecTV, Inc.*, No. EDCV, 07-1182, 2010 WL 2991486, at *6 (C.D. Cal. July 27, 2010)("[C]ase law surveys suggest that 50% is the upper limit, with 30-50% commonly being awarded in case [*sic*] in which the common fund is relatively small"); *Craft v. Cty. of San Bernardino*, 624 F. Supp. 2d 1113, 1127 (C.D. Cal. 2008)("Cases of under $10 million will often result in fees above 25%."). This Court therefore found that the size of the settlement ($10 million) supported "an upward adjustment of the benchmark." *Nuvelo*, 2011 WL 2650592, at *1. So, too, here, with a $5,100,000 settlement, the benchmark should be moved upward to 30%.

This further comports with courts from within this Circuit that have previously recognized that "[a]wards in the range of 30% of a settlement fund are not uncommon in §10(b) common fund cases." *Kriegel*, Case No. 98-CV-4163, slip op. at 17 (collecting cases)(Ex. 6 to Joint Decl.). In so concluding, the court noted that "[a]fter conducting a close review of attorneys' fees awards in common cases, Judge Patel, in *In re Activision Securities Litigation*, 723 F. Supp. 1373 (N.D. Cal. 1989), concluded that attorneys' fees should equal 30% of the total recovery 'absent extraordinary circumstances.' *Id.* at 1378." This Court recently reaffirmed the appropriateness of a 30% award for attorneys' fees. In *Vedachalam v. Tata Consultancy Services Ltd.*, No. C 06-0963 CW, 2013 WL 3941319, at *2 (N.D. Cal. July 18, 2013), the Court

awarded 30% of the common fund for attorneys' fees, explicitly noting that it was only "modestly more than the Ninth Circuit's 25% 'benchmark' percentage."   The Court went on to find that "[i]n light of the many cases in this circuit that have granted fee awards of 30% or more, the requested fee is well within the usual range of percentages awarded in similar cases."   *Id. See also Keller v. Nat'l Collegiate Athletic Ass'n (NCAA)*, Case No. 4:09-cv-1967 CW, 2015 WL 5005901, at *3 (N.D. Cal. Aug. 19, 2015) (citing *Activision* and awarding 30%).

The fee requested is furthermore fully consistent with the fees awarded in numerous other analogous class actions from within this Circuit.  *See, e.g., In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454 (9th Cir. 2000) (upholding award of 33.3% of $1.725 million settlement); *In re Pacific Enter. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (affirming award of 33 1/3% of $12 million common fund); *Heritage Bond*, 2005 WL 1594389, at *19 (awarding fee of 33 1/3 % because "courts in this circuit, as well as other circuits have awarded attorneys' fees of  30% or more in complex class actions"); *Weeks v. Kellogg Co.*, No. CV 09-08102 (MMM) (RZx), 2013 WL 6531177, at *30 (C.D. Cal. Nov. 23, 2013) ("[t]he 30 percent figure is reasonable in light of awards in other common fund cases"); *Fernandez v. Victoria Secret Stores, LLC*, No. CV 06-04149 (MMM) (SHx), 2008 WL 8150856, at *16 (C.D. Cal. July 21, 2008) (34% of common fund); *Garner v. State Farm Mut. Auto. Ins. Co.*, No. CV 08-1365 CW, 2010 WL 1687829 (N.D. Cal. Apr. 22, 2010) (awarding fee of 30% of the $15 million settlement fund); *In re Interlink Electronics, Inc. Sec. Litig.,* No. CV05-8133 AG (SHx), Final Order and Judgment, at 4 (C.D. Cal. June 1, 2009)(awarding 1/3 of a $5 million fund)(attached as Ex. 7 to Joint Decl.); *Jenson v. First Trust Corp.*, No. CV 05-3124 ABC (CTx), Final Order and Judgment, at 3, 12, 36 (C.D. Cal. June 9, 2008) (awarding 1/3 of an $8.5 million fund)(attached as Ex. 8 to Joint Decl.); *In re CV Therapeutics, Inc. Sec. Litig.*, No. C 03-3709 SI, 2007 WL 1033478, at *2 (N.D. Cal. Apr. 4, 2007) (30% of settlement fund); and *Antonopulos v. N. Am. Thoroughbreds. Inc.*, No. 87-0979 G (CM), 1991 WL 427893, at *4, (S.D. Cal. May 6, 1991) (awarding one-third of settlement fund). The fees paid in these comparable cases support the 30% fee award requested.

6.     **Reaction of the Class Supports Approval of the Attorneys'
Fees Requested**

The Court-approved notice was sent to over 10,000 potential Class Members and the Court-approved summary notice was published in *Investor's Business Daily* and transmitted over the *PR Newswire*.    A dedicated website, www.epocratessecuritieslitigation.com, was also created, and all relevant documents and dates were posted thereon.    *See* Declaration of Michael Joaquin (Joint Decl., Ex. 1), ¶¶11, 13.

To date, ***no*** objections to the requested amounts of attorneys' fees and expenses have been received.[6]    The Third Circuit has noted that a low level of objections is a "rare phenomenon."    *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 305 (3d Cir. 2005).    *See also Fernandez*, 2008 WL 8150856, at *13 (3 members objected and 29 opted out, indicating favorable result and award of "generous fee").    The reaction of the Class, therefore, weighs heavily in favor of approving the fee request.

C.     **A Lodestar Cross-Check Affirms Reasonableness of 30% Fee Award**

The first step in applying the lodestar cross-check is to determine the dollar value of the proposed percentage fee award.    Here, counsel requests a fee of $1,530,000.    The next step requires the Court to ascertain the lodestar figure by multiplying the number of hours worked by the hourly rate of counsel, and compare that to the percentage requested.

Here, the cumulative number of hours expended by Lead Counsel is 2,772.90, and the resulting lodestar for the services performed is $1,783,683.[7]    The requested fee is, therefore, much less than the lodestar and is less than one (*i.e.*, .86).    *See In re Portal Software, Inc. Sec. Litig.*, No. C-03-5138 VRW, 2007 WL 4171201, at *16 (N.D. Cal. Nov. 26, 2007) (negative multiplier suggests award is fair and reasonable); *Chun-Hoon v. McKee Foods Corp.*, 716 F.

---

[6]    The last day to file an objection is April 21, 2016.  If any objections are received, Lead Counsel will address them in a reply brief.
[7]    *See* Declaration of Daryl F. Scott filed on behalf of Scott+Scott, Attorneys at Law, LLP in Support of Application for Award of Attorneys' Fees and Expenses ("Scott Decl.") and Declaration of Joshua L. Crowell on behalf of Glancy Prongay & Murray LLP ("GPM") in Support of Application for Award of Attorneys' Fees and Expenses ("GPM Decl."), which are attached to the Joint Declaration at Exs. 2 and 3.

MOTION FOR AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF COSTS AND
EXPENSES - No. 13-cv-00945-VC
328765.1 EPOCRATES

11

1   Supp. 2d 848, 854 (N.D. Cal. 2010).   The negative multiplier further demonstrates that the

2   requested fee is within the range of reasonableness because courts in this jurisdiction often award

3   multipliers in the 1-4 range.   *See, e.g.*, *Vizcaino*, 290 F.3d at 1051 n.6 (finding multipliers ranged

4   as high as 19.6, though most run from 1.0 to 4.0); *Keith v. Volpe*, 501 F. Supp. 403, 414 (C.D.

5   Cal. 1980) (multiplier of 3.5); *In re Veritas Software Corp. Sec. Litig.*, No. C-03-0283 MMC,

6   2005 WL 3096079, at *13 (N.D. Cal. Nov. 15, 2005) (4.0 multiplier with no formal discovery),

7   *vacated in part on other grounds*, 496 F.3d 962 (9th Cir. July 25, 2007).   Consequently, the

8   attorneys' fees sought are plainly reasonable using a lodestar cross-check.

9         Finally, Lead Counsel's hourly rates are also reasonable, as they are "in line with those

10   prevailing in the community for similar services by lawyers of reasonably comparable skill,

11   experience and reputation."   *Blum*, 465 U.S. at 895 n.11.   To begin with, Lead Counsel base their

12   rates upon the experience and skill of the attorney or paralegal performing the work.   These rates

13   are periodically reviewed and adjusted and, as discussed above, Lead Counsel in this case are

14   experienced, highly regarded members of the bar with extensive experience in the area of class

15   actions and complex litigation involving securities claims like those at issue here.   Furthermore,

16   the rates billed by Lead Counsel are comparable to peer plaintiff and defense firms litigating

17   matters of similar magnitude, including Defendants' counsel in this case.   *See,* Ex. 9 to Joint

18   Decl.   Finally, Lead Counsel's rates have repeatedly been evaluated and approved as reasonable

19   by courts within this Circuit and elsewhere.   *See, e.g.*, *Patel v. Axesstel, Inc.*, No. 3:14-CV-1037-

20   CAB-BGS, 2015 WL 6458073, at *8 (S.D. Cal. Oct. 23, 2015)(approving GPM's rates); *In re*

21   *ITT Educ. Servs., Inc. Sec. Litig. (Indiana)*, No. 1:14-cv-01599-TWP-DML, 2016 WL 1162534

22   (S.D. Ind. Mar. 24, 2016)(approving GPM's rates); *In re Mannkind Corp. Sec. Litig.*, Case No.

23   CV 11-0929 GAF (SSx), Order of Final Judgment and Dismissal, at 7 (C.D. Cal. Dec. 21,

24   2012)(approving GPM's rates) (Ex. 10 to Joint Decl.); *In re NQ Mobile, Inc. Sec. Litig.*, No.

25   1:13-cv-07609-WHP, Order Approving Award of Attorneys' Fees and Reimbursement of

26   Expenses and Awarding Lead Plaintiff Volin Reasonable Costs and Expenses Under 15 U.S.C.

27   §78u-4(a)(4), at 1 (S.D.N.Y. Mar. 11, 2016)(approving Scott+Scott's rates) (Ex. 11 to Joint

28

Decl.); *Hodges v. Akeena Solar, Inc.*, Case No. 5:09-cv-02147-JW, Amended Order Awarding Lead Counsel Attorneys' Fees and Expenses, at 1 (N.D. Cal. Dec. 15, 2011) (same) (Ex. 12 to Joint Decl.); *In re Pacific Biosciences of California, Inc. Sec. Litig.*, Master File No. CIV509210, Judgment and Order Granting Final Approval of Class Action Settlement, at 7 (Cal. S. Ct. San Mateo, Oct. 31, 2013) (same) (Ex. 13 to Joint Decl.).

  **D.**  **Counsel's Expenses Are Reasonable and Were Necessarily Incurred to Achieve the Benefit Obtained**

  In addition to an award of attorneys' fees, attorneys who create a common fund for the benefit of a class are also entitled to payment of reasonable litigation expenses and costs from the fund. *OmniVision*, 559 F. Supp. 2d at 1048; *In re Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362, 1366 (N.D. Cal. 1996). The appropriate analysis to apply in deciding which expenses are compensable in a common fund case of this type is whether the particular costs are of the type typically billed by attorneys to paying clients in the marketplace. *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994).

  Lead Counsel in this case have incurred expenses in the aggregate amount of $134,066.86 while prosecuting the action, and these expenses are set forth in the Scott Decl. and the GPM Decl. *See* Joint Decl., Exs. 2 and 3. Important to note is that Lead Counsel were aware that they might not recover any of their expenses and so took significant steps to minimize expenses wherever possible. Joint Decl. at ¶64.

  The categories of expenses for which counsel seek reimbursement are the types of expenses routinely charged to hourly paying clients and should, therefore, be reimbursed out of the common fund. These expenses included, among others, computerized research (*see Media Vision*, 913 F. Supp. at 1371), travel required in connection with this case, including to the three separate hearings on the motion to dismiss and to in-person mediation (*see Thornberry v. Delta Air Lines, Inc.*, 676 F.2d 1240, 1244 (9th Cir. 1982), *cert. granted, judgment vacated*, 461 U.S. 952 (1983)), photocopying costs (*see In re McDonnell Douglas Equip. Leasing Sec. Litig.*, 842 F. Supp. 733, 746 (S.D.N.Y. 1994)), duplication of documents and pleadings, filing fees, postage, overnight delivery, telephone and facsimile expenses. Because these expenses were all

1    necessarily incurred by Lead Counsel in the course of prosecuting this Action, they should be

2    paid from the Settlement Fund.

3         A significant component of Lead Counsel's expenses is the cost of experts and

4    investigators, as well as payment of the respected mediator.  These expenses were critical to

5    Lead Counsel's success in achieving the Settlement.  Joint Decl. ¶65.  Class Members were

6    informed that Lead Counsel intended to seek up to $200,000 in expenses, and no objections have

7    been received to that (higher) amount.  Accordingly, Lead Counsel respectfully requests

8    reimbursement of Lead Counsel's expenses of $134,066.86.

9         **E.    Plaintiff Should Be Awarded Reasonable Costs and Expenses**

10        15 U.S.C. §78u-4(a)(4) permits  Plaintiff in this case to recoup litigation costs (including

11   lost wages) incurred as a result of serving as Plaintiff in the litigation and ensuring that the Class

12   was adequately represented.  Courts "routinely award such costs and expenses both to reimburse

13   the named plaintiffs for expenses incurred through their involvement with the action and lost

14   wages, as well as to provide an incentive for such plaintiffs to remain involved in the litigation

15   and to incur such expenses in the first place."  *Hicks v. Morgan Stanley*, No. 01 Civ. 10071, 2005

16   WL 2757792, at *10 (S.D.N.Y. Oct. 24, 2005).

17        In this case, Plaintiff respectfully requests reimbursement in the amount of $10,000.  *See*

18   Joint Decl. Ex. 4.  As set forth in its declaration, Plaintiff stepped forward to represent the Class

19   and devoted many hours participating in this litigation, including, *inter alia*, investigating the

20   allegations, reviewing pleadings and other court filings, searching for and producing documents

21   in response to document requests, and participating in conference calls with counsel.  *Id.*  Under

22   the PSLRA and comparable case law, Plaintiff is entitled to be reimbursed in the amount

23   requested, which is in line with analogous cases.  *See*, *e.g.*, *Immune Response*, 497 F. Supp. 2d at

24   1173-74 ($40,000 reimbursement to lead plaintiff); *Razilov v. Nationwide Mut. Ins. Co.*, No. 01-

25   CV-1466-BR, 2006 WL 3312024, at *1 (D.Or. Nov. 13, 2006) ($10,000 award to class

26   representative); *Stevens v. Safeway Inc.*, Case No. CV 05-01988 MMM (SHx), Order Approving

27   Final Settlement and Awarding Attorney's Fees and Costs, at 20 (C.D. Cal. Feb. 25,

28

1  2008)(incentive payments of $10,000 and $20,000 to class representatives (attached as Ex. 13 to

2  Joint Decl.).

3       Class Members were informed that Plaintiff intended to seek reimbursement of $10,000

4  and no Class Member has objected to such an award.  Accordingly, Plaintiff  respectfully asks

5  the Court to grant its request for reimbursement of $10,000.  This amount is reasonable, and

6  should be approved.

7  **IV.    CONCLUSION**

8       Plaintiff submits that, for the reasons set forth above and in the Joint Declaration, the

9  Court should award Lead Counsel attorneys' fees of 30% of the Settlement Fund.  The Court

10 should also grant Lead Counsel's request for reimbursement of $134,066.86 in expenses, and the

11 request of Lead Plaintiff for the reimbursement of costs and expenses (including lost wages) in

12 the amount of $10,000.

13 Dated: April 7, 2016                          **GLANCY PRONGAY & MURRAY LLP**

14

15                                              By:    _s/ Joshua L. Crowell_
                                                Lionel Z. Glancy
16                                              Robert V. Prongay
                                                Joshua L. Crowell
17                                              1925 Century Park East, Suite 2100
                                                Los Angeles, California 90067
18                                              Telephone:  (310) 201-9150
                                                Facsimile:  (310) 201-9160
19                                              Email: jcrowell@glancylaw.com

20                                              Beth A. Kaswan
                                                Deborah Clark-Weintraub
21                                              Amanda F. Lawrence
                                                **SCOTT+SCOTT, ATTORNEYS AT LAW, LLP**
22                                              The Chrysler Building
                                                405 Lexington Avenue. 40th Floor
23                                              New York, New York 10174
                                                Telephone:  (212) 223-6444
24                                              Facsimile:  (212) 223-6334
                                                Email:  bkaswan@scott-scott.com

25                                              -and-

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Amanda F. Lawrence
David R. Scott
**SCOTT+SCOTT, ATTORNEYS AT LAW, LLP**
156 South Main Street, P.O. Box 192
Colchester, Connecticut 06415
Telephone:  (860) 537-5537
Facsimile:  (860) 537-4432
Email: david.scott@scott-scott.com

*Attorneys for Lead Plaintiff Police and Fire
Retirement System of the City of Detroit and the
Class*

**PROOF OF SERVICE VIA ELECTRONIC POSTING PURSUANT TO NORTHERN DISTRICT OF CALIFORNIA LOCAL RULES AND LOCAL CIVIL RULE 5-1**

I, the undersigned, say:

I am a citizen of the United States and am employed in the office of a member of the Bar of this Court. I am over the age of 18 and not a party to the within action.  My business address is 1925 Century Park East, Suite 2100, Los Angeles, California 90067.

On April 7, 2016, I caused to be served the following documents:

**PLAINTIFF'S: (1) NOTICE OF MOTION AND MOTION FOR AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF COSTS AND EXPENSES; AND (2) MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

**[PROPOSED] FINAL JUDGMENT AND ORDER OF DISMISSAL WITH PREJUDICE; ORDER ON APPLICATION FOR LEAD COUNSEL'S FEE AND EXPENSE AWARD AND THE LEAD PLAINTIFF COST AND EXPENSE AWARD**

By posting the documents to the ECF Website of the United States District Court for the Northern District of California, for receipt electronically by the parties as reflected on the attached Court's Service List.

And on any non-ECF registered parties:

By U.S. Mail: By placing true and correct copies thereof in individual sealed envelopes, with postage thereon fully prepaid, which I deposited with my employer for collection and mailing by the United States Postal Service. I am readily familiar with my employer's practice for the collection and processing of correspondence for mailing with the United States Postal Service. In the ordinary course of business, this correspondence would be deposited by my employer with the United States Postal Service that same day.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on April 7, 2016, at Los Angeles, California.


*s/ Joshua L. Crowell*
Joshua L. Crowell

# Mailing Information for a Case 3:13-cv-00945-VC Police and Fire Retirement System of the City of Detroit v. Crane et al

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Deborah Sager Birnbach**
  dbirnbach@goodwinprocter.com

- **Anne Louise Box**
  abox@scott-scott.com,edewan@scott-scott.com,efile@scott-scott.com

- **Deborah Clark-Weintraub**
  dweintraub@scott-scott.com,efile@scott-scott.com,aslaughter@scott-scott.com

- **Joshua L Crowell**
  jcrowell@glancylaw.com

- **Hal Davis Cunningham**
  hcunningham@scott-scott.com,efile@scott-scott.com

- **Lionel Z. Glancy**
  info@glancylaw.com,lboyarsky@glancylaw.com,lglancy@glancylaw.com

- **Joseph P. Guglielmo**
  jguglielmo@scott-scott.com,edewan@scott-scott.com,tcrockett@scott-scott.com,efile@scott-scott.com

- **Michael T. Jones**
  mjones@goodwinprocter.com,AGutierrez@goodwinprocter.com,MOdiakosa@goodwinprocter.com,CaseMatters@goodwinprocter.com

- **Beth A Kaswan**
  bkaswan@scott-scott.com

- **Amanda Lawrence**
  alawrence@scott-scott.com,rmcgraw@scott-scott.com,efile@scott-scott.com

- **Teodora Emilova Manolova**
  tmanolova@goodwinprocter.com

- **Robert Vincent Prongay**
  rprongay@glancylaw.com,info@glancylaw.com,echang@glancylaw.com,bmurray@glancylaw.com

- **Nicholas A Reider**
  nreider@goodwinprocter.com

- **Casey Edwards Sadler**
  csadler@glancylaw.com

- **Alexis L. Shapiro**
  ashapiro@goodwinprocter.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

```
Donald              Broggi
Scott  Scott LLP
The Chrysler Building
405 Lexington Avenue
40th Floor
```

New York, NY 10174